**Fill in this information to identify the case:**

Debtor name   **GeneralHealth Group, Inc.**

United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF NEW YORK

Case number (if known)   **24-11860 (JLG)**

☐ Check if this is an amended filing

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors   12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.

**WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.**

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ■ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)
- ■ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
- ■ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)
- ■ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)
- ■ *Schedule H: Codebtors* (Official Form 206H)
- ■ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)
- ☐ Amended *Schedule*
- ☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)
- ☐ Other document that requires a declaration

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   October 31, 2024          X  /s/ Ruth Berenstein
                                         _____
                                         Signature of individual signing on behalf of debtor

                                         **Ruth Berenstein**
                                         Printed name

                                         **Managing Director**
                                         Position or relationship to debtor

**Fill in this information to identify the case:**

Debtor name    **GeneralHealth Group, Inc.**

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF NEW YORK

Case number (if known)    **24-11860 (JLG)**

☐ Check if this is an amended filing

## Official Form 206Sum
## Summary of Assets and Liabilities for Non-Individuals    12/15

| Part 1: | Summary of Assets |
|---|---|

1. **Schedule A/B: Assets-Real and Personal Property** (Official Form 206A/B)

   1a. **Real property:**
   Copy line 88 from *Schedule A/B*................................................................    $ _____ 0.00

   1b. **Total personal property:**
   Copy line 91A from *Schedule A/B*...........................................................    $ _____ 254,100.54

   1c. **Total of all property:**
   Copy line 92 from *Schedule A/B*.............................................................    $ _____ 254,100.54

| Part 2: | Summary of Liabilities |
|---|---|

2. **Schedule D: Creditors Who Have Claims Secured by Property** (Official Form 206D)
   Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*...................    $ _____ 11,030.76

3. **Schedule E/F: Creditors Who Have Unsecured Claims** (Official Form 206E/F)

   3a. **Total claim amounts of priority unsecured claims:**
   Copy the total claims from Part 1 from line 5a of *Schedule E/F*............................................................    $ _____ 0.00

   3b. **Total amount of claims of nonpriority amount of unsecured claims:**
   Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*..............................    +$ _____ 4,760,003.24

4. **Total liabilities** ........................................................................................
   Lines 2 + 3a + 3b    $ _____ 4,771,034.00

| Fill in this information to identify the case: | |
| --- | --- |
| Debtor name | **GeneralHealth Group, Inc.** |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF NEW YORK |
| Case number (if known) | **24-11860 (JLG)** |

☐ Check if this is an amended filing

# Official Form 206A/B

## Schedule A/B: Assets - Real and Personal Property          12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

**Part 1:      Cash and cash equivalents**

1. **Does the debtor have any cash or cash equivalents?**

☐ No.  Go to Part 2.
■ Yes Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | | | Current value of debtor's interest |
| --- | --- | --- | --- |

3.    **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
| --- | --- | --- | --- | --- |
| 3.1. | **Mercury (Choice Financial Group)** | **Checking** | **1655** | $0.00 |
| 3.2. | **Bank of America, N.A** | **Checking** | **4545** | $0.00 |
| 3.3. | **Mercury (Choice Financial Group)** | **Checking** | **2593** | $2,450.54 |

4.    **Other cash equivalents** *(Identify all)*

5.    **Total of Part 1.**
      Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

| | $2,450.54 |
| --- | --- |

**Part 2:      Deposits and Prepayments**

6. **Does the debtor have any deposits or prepayments?**

■ No.  Go to Part 3.
☐ Yes Fill in the information below.

**Part 3:      Accounts receivable**

10. **Does the debtor have any accounts receivable?**

Debtor    **GeneralHealth Group, Inc.**                                    Case number *(If known)*  **24-11860 (JLG)**
_____Name_____

■ No.  Go to Part 4.
☐ Yes Fill in the information below.

| Part 4: | Investments |
|---|---|

**13. Does the debtor own any investments?**

☐ No.  Go to Part 5.
■ Yes Fill in the information below.

| | | | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 14. | **Mutual funds or publicly traded stocks not included in Part 1**<br>Name of fund or stock: | | | |
| 15. | **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture**<br>Name of entity: | % of ownership | | |
| 15.1. | **GeneralHealth Group of Illinois, LLC** | 100 % | N/A | Unknown |
| 15.2. | **GeneralHealth Group of Colorado, LLC** | 100 % | N/A | Unknown |
| 15.3. | **GeneralHealth Group of Pennsylvania LLC** | 100 % | N/A | Unknown |
| 15.4. | **GeneralHealth Group of SouthCarolina LLC** | 100 % | N/A | Unknown |
| 15.5. | **GeneralHealth Group of Utah LLC** | 100 % | N/A | Unknown |
| 15.6. | **GeneralHealth Group of Virginia LLC** | 100 % | N/A | Unknown |
| 15.7. | **GeneralHealth Group of Texas LLC** | 100 % | N/A | Unknown |
| 15.8. | **GeneralHealth Group of Ohio LLC** | 100 % | N/A | Unknown |
| 16. | **Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**<br>Describe: | | | |
| 17. | **Total of Part 4.**<br>Add lines 14 through 16.  Copy the total to line 83. | | | **$0.00** |

| Part 5: | Inventory, excluding agriculture assets |
|---|---|

| Debtor | **GeneralHealth Group, Inc.** | Case number *(If known)* **24-11860 (JLG)** |
|---|---|---|
| | Name | |

**18. Does the debtor own any inventory (excluding agriculture assets)?**

■ No. Go to Part 6.
☐ Yes Fill in the information below.

---

**Part 6:    Farming and fishing-related assets (other than titled motor vehicles and land)**

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

■ No. Go to Part 7.
☐ Yes Fill in the information below.

---

**Part 7:    Office furniture, fixtures, and equipment; and collectibles**

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☐ No. Go to Part 8.
■ Yes Fill in the information below.

| | General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 39. | **Office furniture**<br>**1 heavy duty desk, 5 cabinets, hole puncher, label maker** | **$600.00** | Comparable sale | **$150.00** |
| | **coffee pot, refrigerator, microwave oven** | **$500.00** | | **$100.00** |
| 40. | **Office fixtures** | | | |
| 41. | **Office equipment, including all computer equipment and communication systems equipment and software**<br>**4 computers, 1 printer, 5 monitors, 2 laptops** | **$2,500.00** | Comparable sale | **$600.00** |
| 42. | **Collectibles** *Examples*: Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |

43. **Total of Part 7.**
Add lines 39 through 42.  Copy the total to line 86.

| | |
|---|---|
| | **$850.00** |

44. **Is a depreciation schedule available for any of the property listed in Part 7?**
■ No
☐ Yes

45. **Has any of the property listed in Part 7 been appraised by a professional within the last year?**
■ No
☐ Yes

---

**Part 8:    Machinery, equipment, and vehicles**

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

☐ No. Go to Part 9.
■ Yes Fill in the information below.

| General description<br>Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|

Debtor   **GeneralHealth Group, Inc.**                                    Case number *(If known)* **24-11860 (JLG)**
        ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
        Name

47.   **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles**

48.   **Watercraft, trailers, motors, and related accessories** *Examples:* Boats, trailers, motors,
      floating homes, personal watercraft, and fishing vessels

49.   **Aircraft and accessories**

50.   **Other machinery, fixtures, and equipment (excluding farm
      machinery and equipment)**
      **1 bio-horizan implant piece set**
      **1 amalagator**
      **1 water jug**
      **1 compressor**
      **1 model base former**
      **2 dental chairs**
      **2 curing lights**
      **1 model trimmer**
      **1 vibrator for models**
      **3 opp chairs**
      **1 compressor vacuum**
      **1 cordless phone + base**
      **3 dental units with cabinets**
      **2 instrument racks**
      **1 instrument sharpener**
      **2 x-ray machines**
      **4 cameras**
      **1 blood pressure cuff**
      **1 penetix machine**                              **$15,000.00**   **Comparable sale**              **$800.00**

---

51.   **Total of Part 8.**                                                                    | **$800.00**
      Add lines 47 through 50.  Copy the total to line 87.

52.   **Is a depreciation schedule available for any of the property listed in Part 8?**
      ■ No
      ☐ Yes

53.   **Has any of the property listed in Part 8 been appraised by a professional within the last year?**
      ■ No
      ☐ Yes

**Part 9:**   **Real property**

**54. Does the debtor own or lease any real property?**

      ■ No.  Go to Part 10.
      ☐ Yes Fill in the information below.

**Part 10:**   **Intangibles and intellectual property**

**59. Does the debtor have any interests in intangibles or intellectual property?**

      ■ No.  Go to Part 11.
      ☐ Yes Fill in the information below.

**Part 11:**   **All other assets**

**70. Does the debtor own any other assets that have not yet been reported on this form?**
      Include all interests in executory contracts and unexpired leases not previously reported on this form.

Debtor    **GeneralHealth Group, Inc.**                           Case number *(If known)* **24-11860 (JLG)**
          Name

☐ No.  Go to Part 12.
☑ Yes Fill in the information below.

|  |  |  | **Current value of debtor's interest** |
|--|--|--|--|

71. **Notes receivable**
    Description (include name of obligor)

| | | | |
|--|--|--|--|
| **Intercompany loan to GeneralHealth Group of Texas LLC** | 18,900.00 <br> Total face amount | - 18,900.00 = <br> doubtful or uncollectible amount | $0.00 |
| **Intercompany loan to GeneralHealth Group of Pennsylvania LLC** | 4,498.00 <br> Total face amount | - 4,498.00 = <br> doubtful or uncollectible amount | $0.00 |
| **Intercompany loan to GeneralHealth Group of Illinois, LLC** | 103,601.00 <br> Total face amount | - 103,601.00 = <br> doubtful or uncollectible amount | $0.00 |
| **Intercompany loan to GeneralHealth Group of Virginia LLC** | 21,100.00 <br> Total face amount | - 21,100.00 = <br> doubtful or uncollectible amount | $0.00 |

72. **Tax refunds and unused net operating losses (NOLs)**
    Description (for example, federal, state, local)

73. **Interests in insurance policies or annuities**

74. **Causes of action against third parties (whether or not a lawsuit has been filed)**
    **GeneralHealth Group, Inc. et al v. Paul Hammer, Esq. et al.**                                                        **$250,000.00**

| Nature of claim | **Legal malpractice** |
|--|--|
| Amount requested | **$250,000.00** |

75. **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**

76. **Trusts, equitable or future interests in property**

77. **Other property of any kind not already listed** *Examples:* Season tickets, country club membership

78. **Total of Part 11.**                                                               **$250,000.00**
    Add lines 71 through 77. Copy the total to line 90.

79. **Has any of the property listed in Part 11 been appraised by a professional within the last year?**
    ☑ No
    ☐ Yes

Debtor    **GeneralHealth Group, Inc.**                                    Case number *(If known)*  **24-11860 (JLG)**
                 Name

---

| Part 12: | Summary |
|----------|---------|

**In Part 12 copy all of the totals from the earlier parts of the form**

| Type of property | Current value of personal property | Current value of real property |
|------------------|-----------------------------------|-------------------------------|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1* | $2,450.54 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $0.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $0.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $850.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $800.00 | |
| 88. **Real property.** *Copy line 56, Part 9...........................................................................>* | | $0.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $250,000.00 | |
| 91. **Total.** Add lines 80 through 90 for each column | $254,100.54 | + 91b. $0.00 |
| 92. **Total of all property on Schedule A/B.** Add lines 91a+91b=92 | | $254,100.54 |

| Fill in this information to identify the case: |
|---|
| Debtor name    **GeneralHealth Group, Inc.** |
| United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF NEW YORK |
| Case number (if known)   **24-11860 (JLG)** |

☐ Check if this is an amended filing

## Official Form 206D
## Schedule D: Creditors Who Have Claims Secured by Property                                    12/15

Be as complete and accurate as possible.

**1. Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

☐ Yes. Fill in all of the information below.

**Part 1:    List Creditors Who Have Secured Claims**

2. **List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | Column A | Column B |
|---|---|---|---|
| | | Amount of claim | Value of collateral that supports this claim |
| | | Do not deduct the value of collateral. | |

**2.1   CFG Merchant Solutions**
Creditor's Name

**180 Maiden Lane, 15th Floor**
**New York, NY 10038**
Creditor's mailing address

Creditor's email address, if known

**Date debt was incurred**
**2/10/2023**
Last 4 digits of account number

**Do multiple creditors have an interest in the same property?**
☑ No
☐ Yes. Specify each creditor, including this creditor and its relative priority.

**Describe debtor's property that is subject to a lien**
**All assets**

**Describe the lien**
**UCC Lien**
**Is the creditor an insider or related party?**
☑ No
☐ Yes
**Is anyone else liable on this claim?**
☑ No
☐ Yes. Fill out Schedule H: Codebtors (Official Form 206H)

**As of the petition filing date, the claim is:**
Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

Column A: **$11,030.76**   Column B: **Unknown**

3. **Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.**   **$11,030.76**

**Part 2:    List Others to Be Notified for a Debt Already Listed in Part 1**

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| | | |

**Fill in this information to identify the case:**

Debtor name   **GeneralHealth Group, Inc.**

United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF NEW YORK

Case number (if known)   **24-11860 (JLG)**

☐ Check if this is an amended filing

## Official Form 206E/F
## Schedule E/F: Creditors Who Have Unsecured Claims          12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims.
List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

**Part 1:**   **List All Creditors with PRIORITY Unsecured Claims**

1. Do any creditors have priority unsecured claims? (See 11 U.S.C. § 507)**.**

   ■ No. Go to Part 2.

   ☐ Yes. Go to line 2.

**Part 2:**   **List All Creditors with NONPRIORITY Unsecured Claims**

3. List in alphabetical order all of the creditors with nonpriority unsecured claims. If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

| | | **Amount of claim** |
|---|---|---|
| **3.1** Nonpriority creditor's name and mailing address<br>**ADP, Inc**<br>**PO Box 830272**<br>**Philadelphia, PA 19182**<br><br>Date(s) debt was incurred _<br>Last 4 digits of account number _ | As of the petition filing date, the claim is: *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim:  **Payroll Fees**<br><br>Is the claim subject to offset? ■ No  ☐ Yes | **$632.70** |
| **3.2** Nonpriority creditor's name and mailing address<br>**ArentFox Schiff**<br>**1717 K Street NW**<br>**Washington, DC 20006**<br><br>Date(s) debt was incurred _<br>Last 4 digits of account number _ | As of the petition filing date, the claim is: *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim:  **Legal Services**<br><br>Is the claim subject to offset? ■ No  ☐ Yes | **$57,707.50** |
| **3.3** Nonpriority creditor's name and mailing address<br>**Astound Broadband**<br>**c/o RCN Telecom Services, LLC**<br>**PO Box 11816**<br>**Newark, NJ 07101-8116**<br><br>Date(s) debt was incurred  **Sep'24**<br>Last 4 digits of account number  **6802** | As of the petition filing date, the claim is: *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim:  **Utility Services (Internet)**<br><br>Is the claim subject to offset? ■ No  ☐ Yes | **$326.00** |
| **3.4** Nonpriority creditor's name and mailing address<br>**Auen World Medical Staffing**<br>**Inc. 10231 East 145th Ave**<br>**Brighton, CO 80602**<br><br>Date(s) debt was incurred  **9/1/23**<br>Last 4 digits of account number  **GHGI** | As of the petition filing date, the claim is: *Check all that apply.*<br>☐ Contingent<br>☐ Unliquidated<br>■ Disputed<br><br>Basis for the claim:  **Contract damages**<br><br>Is the claim subject to offset? ■ No  ☐ Yes | **$1,508,000.00** |

| Debtor | **GeneralHealth Group, Inc.** | Case number (if known) | **24-11860 (JLG)** |
|---|---|---|---|
| | Name | | |

---

**3.5** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$635.00**

**ConEdison**
**PO Box 138**
**New York, NY 10276-0138**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  **9/18/2024**

Basis for the claim:  **Utility Services (Electric)**

Last 4 digits of account number  **1222**

Is the claim subject to offset? ■ No ☐ Yes

---

**3.6** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$20,752.63**

**Cosmetic Dental Artistry**
**3223 Beaver Vu Dr., Suite B**
**Dayton, OH 45434**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  _

Basis for the claim:  **Trade Debt**

Last 4 digits of account number  _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.7** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$302,732.33**

**Ennobin Inc.**
**1760 Utica Avenue #1089**
**Brooklyn, NY 11234**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  _

Basis for the claim:  **Business Loan**

Last 4 digits of account number  _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.8** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$2,770.00**

**Haynie & Company**
**8303 North Mopac Expwy, Suite A-120**
**Austin, TX 78759**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  _

Basis for the claim:  **Tax Services**

Last 4 digits of account number  _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.9** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$800.00**

**Metamorphosis Solutions, LLC**
**5000 Arrowhead Trail W SW**
**Lilburn, GA 30047-7000**

☐ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  **2/1/2024**

Basis for the claim:  **Human Resources Services**

Last 4 digits of account number  **GHGI**

Is the claim subject to offset? ■ No ☐ Yes

---

**3.10** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$57,971.00**

**Michel Neret, MD**
**54 Flag Lake Plaza**
**Lake Jackson, TX 77566**

☐ Contingent
☐ Unliquidated
■ Disputed

Date(s) debt was incurred  _

Basis for the claim:  **Judgement**

Last 4 digits of account number  _

Is the claim subject to offset? ■ No ☐ Yes

---

**3.11** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: Check all that apply. | **$2,439,769.72**

**Mountainview Oral Surgery**
**& Implant Center**
**1612 Graves Mills Rd**
**Lynchburg, VA 24502**

■ Contingent
☐ Unliquidated
☐ Disputed

Date(s) debt was incurred  **02/2023**

Basis for the claim:  **Guaranty of GeneralHealth Group of Virginia LLC**

Last 4 digits of account number  _

Is the claim subject to offset? ■ No ☐ Yes

---

| Debtor | **GeneralHealth Group, Inc.** | Case number (if known) | **24-11860 (JLG)** |
|---|---|---|---|
| | Name | | |

---

**3.12** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$12,816.82**

**Ottawa Dental Laboratory, LLC**
**1615 E. Norris Drive**
**Ottawa, IL 61350**

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date(s) debt was incurred __

Basis for the claim: __Trade Debt__

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

**3.13** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$217,405.50**

**Richmond Hill Cosmetic**
**9080 Yonge St Unit 7**
**Richmond Hill, ON**
**L4C0Y7 Canada**

- ☐ Contingent
- ☐ Unliquidated
- ■ Disputed

Date(s) debt was incurred __2021__

Basis for the claim: __Business Loan__

Last 4 digits of account number __GHGI__

Is the claim subject to offset? ■ No ☐ Yes

---

**3.14** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$104,000.00**

**Ruth Berenstein**
**432 Suydam Street**
**Brooklyn, NY 11237**

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date(s) debt was incurred __

Basis for the claim: __Loan__

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

**3.15** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$11,068.04**

**Safco Dental Supply**
**1111 Corporate Grove Dr.**
**Buffalo Grove, IL 60089**

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date(s) debt was incurred __

Basis for the claim: __Trade Debt__

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

**3.16** | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | **$22,616.00**

**Southwest Highway Medical, LLC**
**11900 Southwest Highway**
**Palos Park, IL 60464**

- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

Date(s) debt was incurred __

Basis for the claim: __Lease Guaranty__

Last 4 digits of account number __

Is the claim subject to offset? ■ No ☐ Yes

---

**Part 3:**    List Others to Be Notified About Unsecured Claims

**4. List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2.** Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.

If no others need to be notified for the debts listed in Parts 1 and 2, do not fill out or submit this page. If additional pages are needed, copy the next page.

| Name and mailing address | On which line in Part1 or Part 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|---|---|---|
| | | |

**Part 4:**    Total Amounts of the Priority and Nonpriority Unsecured Claims

**5. Add the amounts of priority and nonpriority unsecured claims.**

| | | Total of claim amounts |
|---|---|---|
| 5a. Total claims from Part 1 | 5a. | $ 0.00 |
| 5b. Total claims from Part 2 | 5b. + | $ 4,760,003.24 |
| 5c. Total of Parts 1 and 2<br>Lines 5a + 5b = 5c. | 5c. | $ 4,760,003.24 |

**Fill in this information to identify the case:**

Debtor name   **GeneralHealth Group, Inc.**

United States Bankruptcy Court for the:   SOUTHERN DISTRICT OF NEW YORK

Case number (if known)   **24-11860 (JLG)**

☐ Check if this is an amended filing

## Official Form 206G
## Schedule G: Executory Contracts and Unexpired Leases                    12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, number the entries consecutively.

1.   **Does the debtor have any executory contracts or unexpired leases?**
     ■ No. Check this box and file this form with the debtor's other schedules.  There is nothing else to report on this form.
     ☐ Yes. Fill in all of the information below even if the contacts of leases are listed on *Schedule A/B: Assets - Real and Personal   Property* (Official Form 206A/B).

| **2. List all contracts and unexpired leases** | **State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease** |
|---|---|
| 2.1  State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | |
| 2.2  State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | |
| 2.3  State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | |
| 2.4  State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br><br>List the contract number of any government contract | |

**Fill in this information to identify the case:**

Debtor name    **GeneralHealth Group, Inc.**

United States Bankruptcy Court for the:    SOUTHERN DISTRICT OF NEW YORK

Case number (if known)    **24-11860 (JLG)**

☐ Check if this is an amended filing

## Official Form 206H
## Schedule H: Your Codebtors

12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.

**1. Do you have any codebtors?**

☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

■ Yes

**2. In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, Schedules D-G.** Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

*Column 1:* **Codebtor**

*Column 2:* **Creditor**

| | Name | Mailing Address | Name | Check all schedules that apply: |
|---|---|---|---|---|
| 2.1 | **GeneralHealth Group of Texas** | **244 Fifth Avenue, L270 New York, NY 10001** | **Michel Neret, MD** | ☐ D _____ ■ E/F __3.10__ ☐ G _____ |
| 2.2 | **GeneralHealth Group of Virginia LLC** | **1612 Graves Mill Road Lynchburg, VA 24502** | **Mountainview Oral Surgery** | ☐ D _____ ■ E/F __3.11__ ☐ G _____ |
| 2.3 | **Ruth Berenstein** | **432 Suydam Street Brooklyn, NY 11237** | **Southwest Highway Medical, LLC** | ☐ D _____ ■ E/F __3.16__ ☐ G _____ |
| 2.4 | **Ruth Berenstein** | **432 Suydam Street Brooklyn, NY 11237** | **Michel Neret, MD** | ☐ D _____ ■ E/F __3.10__ ☐ G _____ |
| 2.5 | **Ruth Berenstein** | **432 Suydam Street Brooklyn, NY 11237** | **Mountainview Oral Surgery** | ☐ D _____ ■ E/F __3.11__ ☐ G _____ |

Debtor    **GeneralHealth Group, Inc.**                                    Case number *(if known)*    **24-11860 (JLG)**

**Additional Page to List More Codebtors**

**Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page.**

| *Column 1:* **Codebtor** | *Column 2:* **Creditor** |
| --- | --- |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 7 |
| GENERALHEALTH GROUP, INC., | Case No. 24–11860 (JLG) |
| Debtor. | |

---

**ATTACHMENT TO SCHEDULES & STATEMENT OF FINANCIAL AFFAIRS**

PLEASE TAKE NOTICE of the attached *Statement of Facts of Ruth Berenstein in Support of Personal Bankruptcy Filing.* A copy of all exhibits thereto are available upon request.

Dated: New York, New York
      October 31, 2024

                **PORZIO, BROMBERG & NEWMAN, P.C.**
                *Counsel to the Debtor*

                By: _____
                      Paris Gyparakis

                1675 Broadway, Ste 1810
                New York, NY 10019
                (212) 265-6888
                pgyparakis@pbnlaw.com

**Statement of Facts of Ruth Berenstein in Support of Personal Bankruptcy Filing**

**United States Bankruptcy Court**

**Eastern District of New York**

**In re:**

**Ruth Berenstein,**

**Debtor**

**Chapter:**

**Case No.:**

---

## STATEMENT OF FACTS OF RUTH BERENSTEIN IN SUPPORT OF PERSONAL

## BANKRUPTCY FILING

### RE: AccessHeat Inc

1. In March 2022, Adam Ezell, a broker of Sunbelt Advisors, approached Ruth Berenstein from AccessHeat Inc regarding the sale of a business.

2. After several months of document review and due diligence, a transaction was completed on June 9th, 2022.

3. On the day of the closing, Mr. Jack Harrison, the chairman of AccessHeat Inc, Ms. Ruth Berenstein, and An unarmed driver attended the closing site at Protech Metals LLC in Pinehurst, North Carolina.

5. William Rickey Hall introduced Ms. Berenstein and Mr. Harrison to all the employees and

Local First Bank where the bill of sale was signed.

6. Ms. Berenstein observed numerous alcoholic beverages in William Rickey Hall's fridge at the work site, raising concerns.

7. William Rickey Hall was not intoxicated on the day of the closing, but post-closing, all parties went to lunch and consumed alcohol apart from Ms. Berenstein and Mr. Harrison.

8. The entire 6-hour meeting proceeded without any hostility, coercion, or force.

9. William Rickey Hall consulted with his counsel once more before signing the final papers on the day of closing.

10. The 2022 Tax Returns presented during due diligence confirmed William Rickey Hall as the sole owner of Protech Metals LLC. Myra Hall was never mentioned during the due diligence process.

11. Sunbelt Brokers of North Carolina, who represented William Rickey Hall, also confirmed that he was the sole owner of Protech Metals and never mentioned any other stakeholders in Protech Metals LLC.

12. Post-closing, for two weeks, Ms. Berenstein requested various operational documents from Mr. Hall.

13. Mr. Hall consistently delayed and did not provide the requested documents/information to Ms. Berenstein.

14. On June 14th, Ms. Berenstein identified a fund transfer from the business account to Mr. Hall's personal account. When confronted, Mr. Hall denied any such movement. It's important to note that only Mr. Hall and Ms. Berenstein had admin rights to the account.

15. Subsequently, Ms. Berenstein revoked Mr. Hall's admin rights to the account and deactivated the card to further investigate potential embezzlement.

16. On June 19th, 2022, Ms. Berenstein traveled from New Jersey to Pinehurst to address the transition delays with Rick.

17. Ms. Berenstein received an irate call from Rick, filled with profanity, expressing his displeasure over the revocation of his bank account admin rights.

18. Given the physical disparity between Ms. Berenstein and Mr. Hall, and Mr. Hall's known affinity for alcohol, firearms and over all hostility, Ms. Berenstein sought local security for her safety during her visit on June 21st.

19. Ms. Berenstein, without any intention of intimidation, was met with extreme agitation from Mr. Hall on June 21st. He loudly demanded that she and her security detail leave the premises, citing a fear of weapons. The security team offered to leave their weapons in their vehicle.

20. With multiple witnesses present, Ms. Berenstein calmly explained to Mr. Hall that he would be on paid leave until he chose to return and cooperate with AccessHeat for a smooth transition.

21. Mr. Hall, after agreeing to the terms, departed the premises. The sheriff present at the time advised him not to return until the ongoing dispute was resolved.

22. On or around June 24th, Mr. Hall returned to converse with Ms. Berenstein. He expressed his displeasure about selling the business to a young female, making derogatory remarks about her capability to manage a manufacturing or distribution business.

23. Ms. Berenstein had suspicions regarding the legal status of some Protech Metals LLC employees. When she voiced these concerns, Mr. Hall reacted aggressively, suggesting that not everything should be done "by the book."

24. Subsequent investigations revealed, with evidence, that Rick Hall and Brian Brewer were aware of the illegal employment status of Candelario and Guadalupe, who had been with Protech Metals LLC for over 20 years.

25. Ms. Berenstein discovered that since 2020, there were significant issues with the paint quality and service for the major contract with Ingersoll Rand. The severity of the issue led the Operations Associate to seek advice from Caterpillar, bypassing Ingersoll Rand.

26. Conversations with Brian Brewer, a longtime friend of Rick Hall and Operations Manager for over 15 years, revealed that he had been making under-the-table payments to Luis Garcia at Ingersoll Rand to maintain the contract to which Ms. Berenstein denied its continuance. This contract was worth 75% of Protech Metal's revenue.

27. Throughout June and July, Rick persistently contacted the employees, claiming he had been deceived and intended to reclaim ownership from Ms. Berenstein.

28. Brian Brewer conveyed to Ms. Berenstein about Mr. Hall's borderline criminal behavior through multiple text messages. He expressed his frustrations and fears of extortion.

29. Brian Brewer also indicated that Mr. Hall played no significant role in Protech Metals LLC and was not welcome at the client site (Ingersoll Rand), which accounted for approximately 80% of the company's revenue.

30. Around July 11th, Brian Brewer initiated a 50-c against Rick Hall due to Rick's continuous disruptions when Ms. Berenstein was off-site.

31. Shortly after, Brian Brewer retracted his 50-c and resigned from Protech Metals.

32. Ms. Berenstein had also filed a 50-c but was counseled by a counsel from Womble Dickinson to withdraw it on July 25th to address the dispute more amicably.

33. On July 26th, Mr. Hall filed a Restraining Order against Ms. Berenstein, making several unfounded allegations against her and AccessHeat Inc. These motions were dismissed on July 28th in Moore County court, charges were then dropped.

34. Around July 8th, Mr. Hall's son and Ms. Berenstein collaborated with a junk removal team to

clear unnecessary trash on-site and label Mr. Hall's personal items. Most of these items were removed by Mr. Hall, who visited multiple times to verify.

35. Mr. Hall repeatedly returned to the site without notice, threatening and harassing Ms. Berenstein in front of several witnesses. On August 5th, the Sheriff warned him again after he attempted to remove property from the site.

36. On October 5th, Mr. Hall returned, stealing a computer from the business and fleeing before the arrival of the Sheriffs.

37. All lease payments were consistently made to Mr. Hall via check every month since the acquisition.

38. Mr. Hall refrained from cashing any payout or lease checks until mid-November, a historically low production month. This was also when Ingersoll Rand, contributing to 80% of Protech Metals LLC's revenue, terminated their agreement.

39. Following these events, Mr. Hall's associates escalated their threats. Notably, on December 10th, Keith Anderson sent a menacing text message to Ms. Berenstein, threatening severe harm and gang rape.

40. On December 1st, Brian Brewer sent a message to Ms. Berenstein. Within this message, he included a screenshot of her security camera, proceeding to disrespect her through the text.

41. Due to the escalating harassment and threats, Ms. Berenstein felt compelled to report all three men, namely Mr. Hall, Mr. Brewer, and Mr. Anderson, to the magistrate. Subsequent to her report, individuals were apprehended and assigned court dates.

42. On January 10th, following his arrest, Rick Hall made an attempt to contact Ms. Berenstein. She chose not to engage and did not answer his call.

43. In what appears to be a tactic to intimidate Ms. Berenstein, Mr. Hall reported a worthless

check crime to the magistrate. This pertained to checks amounting to over $30,000, which he

attempted to cash during a historically low production month for the business.

44. In March, upon being informed of an impending OSHA inspection concerning asbestos, Mr.

Hall took the opportunity to halt operations during a period when Ms. Berenstein was away on

business travel. Furthermore, he took unauthorized action to change the locks on the building and

stole the new client base data with the assistance of the former admin Donna Groff.

45. Given Mr. Hall's unpredictable and concerning behavior, coupled with allegations of fraud

and misrepresentation, AccessHeat Inc. resolved to initiate legal proceedings in April.

Predictably, Mr. Hall filed for bankruptcy soon after, a move that many legal counsels had

anticipated.

46. With the assistance of Mr. Waldrep and Mr. Van Camp's firm, AccessHeat Inc. was able to

draft a final settlement agreement between Rick Hall, Myra Hall, Protech Metals, and Ruth

Berenstein. Within this agreement, Mr. Hall consented to pay a settlement amount, ensuring he

would not face legal repercussions for his alleged fraudulent and criminal actions. Both parties

affixed their signatures to this agreement.

47. From July 2022 to April 2023, Ms. Berenstein made multiple attempts to find a resolution to

the ongoing disputes. She engaged the services of several law firms during this period. However,

it became increasingly clear that Mr. Hall was not genuinely interested in finding a resolution,

but rather seemed intent on prolonging the process.

48. Throughout the ten-month period of AccessHeat's legal ownership, Ms. Berenstein continued

to remunerate Mr. Hall with a salary. Despite this, he repeatedly returned to the site, where he

engaged in actions that can be described as harassment and threats directed at Ms. Berenstein.

49. From the moment of acquisition until the forceful eviction orchestrated by Mr. Hall, Ms.

Berenstein and AccessHeat Inc. worked diligently. Their efforts were focused on securing

additional contracts and establishing new client relationships.

50. Protech Metals LLC was presented to potential buyers as a business boasting nearly $1 million in revenue. However, it was later revealed that a significant 80% of this revenue was rooted in close personal friendships and a myriad of undisclosed production issues.

51. A closer examination of the financials revealed that, when discounting the problematic contract, Protech Metals LLC's actual revenue ranged between $150,000 to $200,000.

52. Ms. Berenstein engaged with multiple paint vendors across the nation in a bid to find a viable solution for Ingersoll Rand. However, she was kept out of the loop regarding the core issues. Instead, these issues were communicated to Harmony McDowell, a close associate of Mr. Hall with a history of drug addiction.

53. Recognizing the need for a legitimate workforce, Ms. Berenstein made concerted efforts to recruit new staff, replacing the illegal workers previously employed by Rick Hall. Legal counsel (Womble Dickinson) advised her to terminate these workers immediately, given the potential legal repercussions.

54. Ms. Berenstein worked tirelessly to secure new contracts, aiming to revitalize the business after the unexpected drop in revenue. Within two months of taking over the business, she secured a contract worth over $100,000 with a reputable vendor, Danao Living, based in North Carolina. This contract was the lifeline for Protech Metals LLC. Furthermore, Ms. Berenstein had

established connections with prominent construction companies in the region, such as Crowne

Partners, RDU Airport, Ocano Club (a project worth man than $500k) and Dr. Horton (the largest

home builder in the country). She also generated over 500 leads for Protech Metals, dedicating

hundreds of hours to manual outreach efforts.

55. Friends and associates of Mr. Hall took to online platforms to leave negative reviews about

Protech Metals LLC, specifically targeting the new management. These individuals, despite

never having visited Protech Metals LLC, made disparaging remarks about the "bad people" who

had taken over as the new owners.

56. Ms. Berenstein was informed by former business partners of Mr. Hall that he was actively

engaging in efforts to tarnish her professional reputation.

57. In a particularly concerning incident, Mr. Hall, in collaboration with Donna Groff and an

employee of Ms. Berenstein, created a fraudulent "Wanted" poster using Ms. Berenstein's image.

This poster was then distributed across all businesses owned by Ms. Berenstein. This act not only

instilled fear but also severely damaged her existing business relationships.

58. The actions of Mr. Hall, particularly his reckless behavior, jeopardized the well-being of

many patients. Additionally, his actions caused numerous employee-related issues for Ms.

Berenstein within GeneralHealth Group Inc, causing damages.


59. As a result from the disbursement of these fraudulent fake wanted posters and blog from

"health watch" alleging that Ms. Berenstein was wanted by the FBI, operating a ponzi scheme,

along with using Ms. Berensteins former partners record against her and her business operations

causing her to lose ~$8M in yearly revenue.

60. Leading to her business located in UT, OH, SC, IL and TX into recession, placing patients

lives at risk, and causing multiple employees to lose their jobs.

61. Furthermore leading to GENERALHEALTH GROUP INC. (GHG) to be sued using these

defamatory and fraudulent allegations

**RE: GeneralHealth Group Inc**

**<u>RE: Dr Aylward's Practice</u>**

62. On May 5, 2021 GeneralHealth Group (Adon Segal former CEO) made and approached

Gerrard Aylward and Linda Aylward in its interest in purchasing its dental practice

(ChicagoLand4Braces)

63. APA came to its execution on October 13, 2021, under the assumption that accounts payables

(AP) was to be cleared off and $60,000 in accounts receivables (AR) to be collected, when in reality

the practice was under over $100,000 in debt

64. Gerrard Aylward had received .25% of share to which later was increased to 20% of shares

upon his continued support for GENERALHEALTH GROUP INC. (GHG) in further

expanding its business

65. On Jan 29, 2022 Linda Aylward attempted to mislead GENERALHEALTH GROUP INC.

(GHG) into assuming an SBA loan under the assumption that funds were spent on the business

expenditure. Based on factual evidence and the lack of paper trail clarifying what was used for

the business, GENERALHEALTH GROUP INC. (GHG) concluded that majority of the SBA

loan was in fact used to repair Gerrard Aylwards home roof rather than the business hence

GENERALHEALTH GROUP INC. (GHG) did not assume that liability,

66. On June 11, 2022 Linda Aylward was confronted for stealing over $13,000 of

GENERALHEALTH GROUP INC. (GHG)s revenue to which she Zelled over to the

GENERALHEALTH GROUP INC. (GHG) bank account after numerous conversation and her

denying ever having the funds

67. Out of good faith GENERALHEALTH GROUP INC. (GHG) continued with the

business operations & paying off the vendorswhile excluding the $100,000 of debt from the

purchase. This debt and misleading transaction contributed to much of the financial strain

that came onto GENERALHEALTH GROUP INC. (GHG) in the later months.

**68.** Over its continuance of business GENERALHEALTH GROUP INC. (GHG) had increased

the businesses, recruited professionals,improved the overall marketing.

69. Upon Gerard Aylward and Linda Aylward discovering that GENERALHEALTH

GROUP INC. (GHG) was having liquidity issues they decided topursue litigation with

fraudulent  and defamatory allegations

70. Gerrard Aylward and Linda Aylward later on decided to pursue litigation against

GENERALHEALTH GROUP INC. (GHG) claiming the GENERALHEALTH GROUP INC.

(GHG) owed them the initial $100,000 of debt they had handed over the business with.

Fraudulently claiming that GENERALHEALTH GROUP INC. (GHG) had placed the practice

under that debt.

71. Gerrard Aylward fraudulently claimed that GENERALHEALTH GROUP INC. (GHG) had

"mislead" him into believing that he would be obtaining shares within the corporation, and

alleged that no payments were ever madeand fraudulently filed these allegations in court.

72. Gerrard Aylward took it upon himself to call another doctor by the name of Dr. David Kozal,

which had also sold his business to GENERALHEALTH GROUP INC. (GHG) and spread not

only rumors but also fraudulent and defamatory allegations about Ms. Berenstein and

GeneralHealth Group as a whole.

73. GENERALHEALTH GROUP INC. (GHG) proved these allegations to be nothing but an

attempt to sabotage GENERALHEALTH GROUP INC. (GHG)s reputation along with Ms.

Berenstein's. Upon factually proving these allegations to be fraudulent during discovery, on November 3, 2023, Gerrard Aylward along with Linda Aylward and Ms. Berenstein entered into a settlement agreement to which was later executed and finalized on April 3, 2024.

### RE: Dr. Michel/Michael Neret's Practice

74. On September 14th, 2022 Dr. Neret responded to an email sent by Mark Cohen, a volunteer operations contractor, regarding GENERALHEALTH GROUP INC. (GHG) interest in the acquisition of his practice.

75. From September 14th, 2022, to the 1st of February, 2023, GENERALHEALTH GROUP INC. (GHG) and Michel Neret engaged in discussionsregarding the sale, including detailed financial reviews, leading to the signing of the asset purchase agreement (APA) agreement. Both parties agreed that ancillary documents would be signed during the transition.

76. Over the course of 4 and a half months, Dr. Neret had extensive discussions with GENERALHEALTH GROUP INC. (GHG) about financialsand the intricacies of post-acquisition procedures.

77. During the same period, GENERALHEALTH GROUP INC. (GHG) facilitated a smooth transition for the sale of real estate from one of Dr. Neret's properties to a buyer, ensuring a trustworthy transition and client reassurance.

78. After signing the asset purchase agreement (APA), the transition commenced, and GENERALHEALTH GROUP INC. (GHG) and Dr. Neret were scheduled to meet in early April of 2023.

79. During the two months following the signing of the asset purchase agreement (APA), GENERALHEALTH GROUP INC. (GHG) became aware of Dr. Neret's expulsion from an Optum program due to questionable coding tactics, as informed by the officemanager of Dr. Neret's

previous practice.

80. GENERALHEALTH GROUP INC. (GHG)'s billing contractor advised

GENERALHEALTH GROUP INC. (GHG) of Dr. Neret's unethical coding behavior

81. During this period, GENERALHEALTH GROUP INC. (GHG) diligently worked to

rectify billing matters to prevent financial strain on Dr. Neret'spractice, ensuring it did not

suffer as a result of the coding issues. It's worth noting that Dr Neret was desperately putting

in personal funds from account 99339 into the practice prior to the acquisition and this can

be seen on the IBC business bank statement as well.

82. On April 11th, Dr. James Bonnette (GENERALHEALTH GROUP INC. (GHG)s now

former Chairman) and Ms. Berenstein confronted Dr. Neret at his office for his fraudulent

coding tactics, leading to a denial initially. Subsequently, when presented with lettersfrom

Wellmed, Dr. Neret's demeanor changed, reflecting discomfort and anger.

83. On April 14th, Dr. Bonnette expressed serious concerns to Ms. Berenstein about Dr. Neret's

practice based on his discussions with GENERALHEALTH GROUP INC. (GHG)'s billing

contractor.

84. On April 17th, Dr. Bonnette resigned due to severe concerns regarding the entirety of Texas

practices being conducted through fraudulent coding and supported GENERALHEALTH

GROUP INC. (GHG) in referring them to a firm that can assist with a billing audit. It's worthy

to note that Dr Bonnette is one of the most respected VPs of the largest healthcare company in

the U.S., Optum (UnitedHealthCare)

85. From April 17th to April 20th, Mark Cohen visited Dr. Neret's practice to analyze certain

mattersand create an action plan for growth. Mark Cohen reported that he observed

discomfort in Dr. Neret's behavior whenquestioned about unethical coding practices.

86. Less than three weeks later, Dr. Neret locked GENERALHEALTH GROUP INC.

(GHG) and its representatives out of all bank accounts, refusing to discuss the matter and displaying an uncooperative attitude.

87. Noah Meek, a counsel of Dr. Neret contacted GENERALHEALTH GROUP INC. (GHG) with misleading words and claims, and GENERALHEALTH GROUP INC. (GHG) insisted on payment for their invoice and work, or else they would not proceed with a rescission.

88. Noah Meek decided to file a lawsuit against GENERALHEALTH GROUP INC. (GHG) and Ms. Berenstein with fraudulent claims, including baselessaccusations of GENERALHEALTH GROUP INC. (GHG) directors and freelancers being "fugitives."

89. Noah attempted to use two irrelevant lawsuits, where Ms. Berenstein prevailed, as a tactic to intimidate counsels, despite the lack of relevance to the current case. One of the lawsuits relates to a fraudster who Ms Berenstein sued and received a settlement fee from, Rick Hall. The other is a lawsuit made with malice intent towards GENERALHEALTH GROUP INC. (GHG) by Gerard Aylward.

90. Dr. Neret, in the Temporary Restraining Order (TRO), explicitly requested that GENERALHEALTH GROUP INC. (GHG) or any of its representatives refrain from contacting any payers, with special emphasis on UnitedHealth, the group that had previously expelled him due to fraudulent behavior.


**RE: Paul Hammer. Barron and Newburger P.C.**

91. Paul Hammer a Shareholder from Barron and Newburger, P.C. approached GENERALHEALTH GROUP INC. (GHG) on June 23rd earlier this year (2023) and requested to discuss a potential assistance for the allegationsagainst GeneralHealth Group Inc and its subsidiary.

92. Ms. Berenstein and Paul had a 19 minute discussion on 26th of June where they spoke about

the case and about how they will be representing GENERALHEALTH GROUP INC. (GHG) Inc, with the exception of Mark/Morty due to the taboo associated with his personal case. Ms. Berenstein agreed to this and executed theengagement letter.

93. On the 28th of June, all the evidence was compiled against the alleged fraudster Dr Neret and the facts of his unethical and fraudulent activities.

94. Ms. Berenstein reached out several times until receiving a response about a "reaching out" to the opposing counsel regarding regaining the business bank account access which Ms. Berenstein clarified on the phone call with Paul that GENERALHEALTH GROUP INC. (GHG) nor any of its representatives had any access to.

95. a. On the 6th of July, our group received an incorrect invoice from Barron and Newburger, PC reflecting incorrect hours. 2 hours were charged for a 19-minute phone call along with other skeptical charges.

95. b. On July 17th, Ms. Berenstein had a short call less than 15 minutes with Charles who explained that there has been one phone call with the opposing counsel in which he was yelling the whole time and not listening to anyone and that he will let Ms. Berenstein know if there is any responses moving forward.

96. On August 11th, Ms. Berenstein sent another simple email with full details to the questions asked by Charles. These questions were all answered on the phone call as well as the initial email of evidence sent on June 28th , 2023.

97. On August 11th, 2023,  Ms. Berenstein also asked about the excessive and unjustified number of hours spent on this case which was up to 32 hours up to that point with absolutely no explanationof what had occurred. Ms. Berenstein also sent a doc file requested by the GENERALHEALTH GROUP INC. (GHG) team to give fullmeeting notes and explanations of these "meetings of countless hours" with the opposing counselto which of only 1-2 of them

GENERALHEALTH GROUP INC. (GHG) was made aware of but received absolutely no response.

98. On October 19th , 2023, (after telling Ms. Berenstein on September 9th, 2023,  that Paul will get back to Ms. Berenstein as soon as possible regarding the invoices) Paul sent one email explaining a settlement offer that has no benefits for GENERALHEALTH GROUP INC. (GHG), has misleading verbiage and to which the opposing party had not agreed to.

99. On November 21, 2023 Paul Hammer sent a withdrawal motion 8 business days prior to the trial upon being questioned as to why we were receiving doctored email along with fraudulent claims made on the invoice.

100. Failing to disclose any discovery questions from opposing parties, along with the failure to pay the jury trial fess, and the failure to file a motion to grant clients the opportunity to obtain time in order to retain a new legal counsel, lead to a default judgement

101. In the post judgement discovery, many irrelevant information was demanded to be provided by Noah Meek.

102. Under the current pressure from the opposing party, Ms. Berenstein was demanded to provide personal employee information although our greatest efforts not to do so. As it was stated that it would put the corporation in its entirety at risk.

103.   Upon disclosure of GENERALHEALTH GROUP INC. (GHG)s bank accounts and information, a mysterious email from "Healthcarewatch@gmail.com" was sent out as an email campaign, claiming that GENERALHEALTH GROUP INC. (GHG) and Ms. Berenstein were conducting fraudulent activities and were partaking in a Ponzi scheme, along with further allegations of Ms Berenstein being wanted by the FBI. This was a deliberate act of sabotage orchestrated with malicious intent.

103B. It is important to note that following the termination of all contracts with

GENERALHEALTH GROUP INC. (GHG) due to the dissemination of defamatory emails

falsely accusing Ms. Berenstein of operating a Ponzi scheme, Mr. Noah Meek resorted to threats

of incarceration in an effort to coerce unjust and unfair payments. Mr. Meek's intimidation

tactics included demands that GENERALHEALTH GROUP INC. (GHG) refrain from paying

its vendors or employees, and instead prioritize the payment of Mr. Michel Neret's default

judgment.

**RE: Dr. Magid's Practice**

104. GENERALHEALTH GROUP INC. (GHG)s initial outreach was made on November 29th,

   2022 to Dr Magid.

105. A serious of due diligence questions were sent to Dr Magid(Answers to DD doc file)

to which one answer in particular specified that he is in fact the sole owner of the LLC

and real estate.

106. June 30th, 2023, both parties finalized the closing documents

107. The office manager amongst other staff made many complaints dating back to January

30th, 2024, about problematic staff with little to no action taken on behalf of Dr. Magid to help

mediate the problems due to his favoritism towards older staff

108. Our 7-month progress report that GENERALHEALTH GROUP INC. (GHG) has worked

relentlessly highlights the positiveimpact GENERALHEALTH GROUP INC. (GHG) brought

to Dr. Magids practice.

109. On Feb 21st, 2024 we received a subpoena order from Deborah Magid (ex wife of Dr. Magid)

110. Dr. Magids' attorney Justin Wade and Ruth had a discussion regarding the fraudulent

allegations in Illinois and the default judgment in Texas.

111. On March 8th, 2024 Airbnb records show that Ms. Berenstein traveled to meet with Dr. Magid in person to discuss and address the concerns raised by Dr. Magid and Justin.

112. Upon Ms. Berenstein arrival and discussion with Dr. Magid, it appeared that Ms. Bernstein's suspicions were correct as per Dr. Magid confirmed that in fact Deborah owned 50% of the PC and was intitled to 50% of the payouts and the lease, he just believed that she was not entitled to it.

113. Dr. Magid went on to completely ignore Ms. Berenstein while GENERALHEALTH GROUP INC. (GHG) remained locked out of the business bank account and attempting to mediate the problem

114. Dr. Magid only emailed Ms. Berenstein on the day of her arrival in Lynchburg, essentially pleading her  not to disclose documents to his wife's counsel, as he was attempting to hide the transactional documents from her. (March 8th)

115. On March 8th, Dr. Magid also shared an email drafted by Deborah divorce attorney showing an email from "healthwatch.com" making fraudulent and defamatory allegations about Ms. Berenstein and a former contractor along with the default judgement made in Texas

116. In Ms. Berenstein last email to Justin Wade dated March 14th, 2024 I highlighted my concerns over Dr. Magids speculative actions,  confirmation of Deborahs 50% ownership and along with a notice of breach of contract. Out of good faith Ms. Berenstein requested further time in attempting to mediate all problems prior to heading into potential litigation.

117. Dr. Magid then proceeded to stop an IT vendor transition intentionally

118.  Dr Magid's divorce counsel, Joseph Sanzone then reached out to GENERALHEALTH GROUP INC. (GHG)s internal legal advisor Mr. Stein becausethey were concerned that GENERALHEALTH GROUP INC. (GHG) would provide the transactional documents to Dr.

Magids former wife.

119. Joseph Sanzone provided the name of a divorce counsel and recommended that GeneralHealth Group (GENERALHEALTH GROUP INC. (GHG)) retain his services to avoid the obligation of responding to the subpoena order that had been received.

120. Ms. Berenstein and her team attempted to retain ownership of their bank account with Truist Bank to ensure access, based on their rightful assumption agreement and bill of sale. Truist Bank confirmed that Dr. Magid was locking GENERALHEALTH GROUP INC. (GHG) out of the business account. At this time, the revenue and accounts were solely owned by GENERALHEALTH GROUP INC. (GHG).

**RE: Dr Choby's Practice**

121. The Center for Dental Implants was acquired on July 1, 2023

122. Prior to GENERALHEALTH GROUP INC. (GHG)s takeover Dr. Bill Choby the former owner of The Center for Dental Implants would transfer personal funds to keep the business alive

123. Throughout the management of GENERALHEALTH GROUP INC. (GHG), Dr. Choby was very resistant and reluctant to change

124. There were numerous disputes over calculations, vendor costs, recruitments made and overall, any improvements made toward the practice

**125.** GENERALHEALTH GROUP INC. (GHG) managed to increase payer rates by 30%

126. GENERALHEALTH GROUP INC. (GHG) managed to save Dr. Choby from the verge of both personal and corporate bankruptcy due to the increases in rates allowing the practice to sustain itself.

**127.** GENERALHEALTH GROUP INC. (GHG) also successfully reduced vendor costs

while increasing the quality of products

128. Upon receiving a mysterious email from healthwatch@gmail.com Dr. Choby took it upon

himself to restrict GENERALHEALTH GROUP INC. (GHG) out of their bank account access

129.     Dr. Choby went on to allege that GENERALHEALTH GROUP INC. (GHG) owed

him $30,000 when the practice generated $15,000-20,000 in monthly revenue. This

allegation seems to be a tactic aimed at reclaiming the practice from GENERALHEALTH

GROUP INC. (GHG) without compensating for the improvements made. The nature of this

allegation suggests it may be a strategic maneuver, similar to other unscrupulous tactics

previously encountered by GENERALHEALTH GROUP INC. (GHG).

130. These defamatory and fraudulent allegations against GENERALHEALTH GROUP INC.

(GHG) and Ms. Berenstein caused the loss of nearly all its revenue leading to it filing with the

courts for Chapter 7 at both the corporation and individual.

131. In reviewing the situation, it is important to note that Mr. Hall previously indicated that he

had ceased operations under Protech Metals LLC. However, it has come to light that he is

continuing to conduct business under the name Pinehurst Blacksmith Shop. This was

confirmed through a phone call to Protech Metals, during which Mr. Hall answered the phone

and identified the business as Pinehurst Blacksmith Shop. Additionally, original Google

reviews reveal the unfortunate decline in the business's performance following Mr. Hall's

resumption of control. This appears to be a key reason behind his decision to operate under a

different name, potentially to avoid negative associations with the previous entity.