# EXHIBIT B

# PROMISSORY NOTE

$2,509,691.03                                                                                                        June 30, 2023

    **WHEREAS**, the undersigned **GENERALHEALTH GROUP, INC.**, a Florida corporation with a notice address of 244 5th Avenue, L270, New York, NY 10001 (the "Borrower") hereby unconditionally promises to pay to the order of **MITCHELL J. MAGID, DMD, P.C.**, Virginia professional corporation (the "Lender"), in lawful money of the United States, the principal sum of Two Million Five Hundred Nine Thousand Six Hundred Ninety-One Dollars and Three Cents ($2,509,691.03) (the "Loan Amount"); and

    **WHEREAS**, Borrower and Lender have entered into that certain Asset Purchase Agreement dated June 30, 2023 (the "Purchase Agreement"), whereby Borrower purchased substantially all of the assets of Lender utilized in Lender's operation of a dental practice; and

    **WHEREAS**, Capitalized and defined terms used in this Promissory Note shall have the same meanings as those ascribed to them in the Purchase Agreement.

    **NOW THEREFOR, FOR VALUE RECEIVED,** the undersigned Borrower promises to repay to Lender, or order, at Lender's mailing address of 1199 Sleepy Oak Lane, Forest, Virginia 24551, or at such other place as the Lender may designate in writing, the Loan Amount set forth above together with interest on such principal sum as of and from the date set forth herein at the rate set forth hereinafter, which principal and interest shall be payable in accordance with the terms set forth hereinafter:

    1.    **Purchase Price; Interest Rate**. The aggregate purchase price for the Purchased Assets shall be $2,509,691.03 plus the assumption of the Assumed Liabilities and Accounts Receivable, subject to Adjustments set forth in Section 2.05. The Purchase Price shall be paid to Seller as follows: (i) 36 monthly installments with a debt service coverage ratio of 1.42 (monthly EBITDA Calculation, *divided by* 1.42 *equals* monthly payment due to Seller) ("Monthly Installments") with the first payment to be made on the 30th day following the Closing Date (the "First Payment Date") and each of the remaining 35 Monthly Installments on thirtieth succeeding day, and (ii) remaining balance of the purchase price set forth in Section 2.03 of the Purchase Agreement due on the third anniversary (37th month) of the First Payment Date (the "Maturity Date"). At the conclusion of each and every month following the Closing Date, Buyer shall prepare and deliver to Seller a statement (the "EBITDA Calculation") setting forth Buyer's determination of debt service coverage ratio and corresponding payment to Seller. If Seller disputes any of the items contained in the EBITDA Calculation, Seller may deliver to Buyer written notice of such objection within thirty (30) days following the delivery of the EBITDA Calculation, setting forth in reasonable detail Seller's objection. If Seller timely delivers a written notice of objection as to the EBITDA Calculation, Buyer and Seller shall cooperate in good faith to resolve the dispute, and if Buyer and Seller are unable to resolve the dispute within thirty (30) days of the Buyer's receipt of such written objection(s), the dispute shall be submitted to an independent accounting firm mutually agreed by Buyer and Seller (which shall act as an expert and not an arbitrator) for final resolution. If Seller does not deliver a written notice of objection as to the EBITDA Calculation within thirty (30) days of their original delivery, Seller shall be deemed to have irrevocably agreed


EXHIBIT B

to all items and amounts contained in the EBITDA Calculation. The interest rate applicable to Monthly Installments shall vary from month-to-month in accordance with the then-current Applicable Federal Rates of short-term loans issued by the Internal Revenue Service.

2. **Accounts Receivable Installments**. In consideration of the Accounts Receivable (as defined in the Purchase Agreement), Borrower shall pay to Lender (in addition to and in no event in lieu of the amounts set forth in Section 1 hereof) a sum equal to seventy-five percent (75%) of the total value of the Accounts Receivable as of the Closing Date (as set forth in the Purchase Agreement), payable to Lender in 36 equal monthly installments of $2,491.42 ("AR Payments"). The AR Payments shall be due and payable simultaneously with the Monthly Installments set forth in Section 1 hereof. The interest rate applicable to AR Payments shall vary from month-to-month in accordance with the then-current Applicable Federal Rates of short-term loans issued by the Internal Revenue Service.

3. **Security**. This Promissory Note shall be secured by that certain Security Agreement made by and between Lender and Borrower, executed contemporaneously herewith, collateralizing the Practice Assets (the "Security Agreement").

4. **Events of Default**. In the event of the occurrence of any event described herein (each an "Event of Default"), Lender may declare that Borrower is in default hereunder, accelerate this Promissory Note and at any time thereafter exercise any and all rights and remedies available to Lender hereunder, under the Purchase Agreement, the Security Agreement and/or pursuant to applicable law. Any such declaration of an Event of Default shall be made by Lender in writing. Each of the following shall constitute an Event of Default: (a) if Borrower fails to make any payment required under this Promissory Note within thirty (30) days after its due date (other than the payment in full on the Maturity Date); (b) if Borrower is in breach of or in default under the Purchase Agreement, and any such breach or default continues uncured for thirty (30) days after written notice from Lender; (c) if any case, proceeding or other action is commenced or instituted against Borrower seeking to have an order for relief entered against Borrower as debtor, or to adjudicate Borrower as bankrupt or insolvent, or seeking any other relief with respect to Borrower or her debts under any existing or future law of any jurisdiction, domestic or foreign, relating to bankruptcy, insolvency, reorganization or relief of debtors, or seeking appointment of a receiver, trustee, custodian or other similar official for Borrower or for all or any substantial part of Borrower's property, which either results in any such entry of an order for relief, adjudication of bankruptcy or insolvency or such an appointment or the issuance or entry of any other order having a similar effect, or seeking issuance of a warrant of attachment, execution, distraint or similar process against all, or any substantial part, of Borrower's property which results in the entry of an order for any such relief which is not vacated, discharged, or stayed or bonded pending appeal within one hundred twenty (120) days from the entry thereof; or (d) if a trustee, receiver or other custodian is appointed for any substantial part of the assets of Borrower, which appointment is not vacated or effectively stayed within one hundred and twenty (120) days. Lender may exercise any right under this Promissory Note, the Purchase Agreement, the Security Agreement, or any law, even if Lender is delayed in exercising that right or agreed in an earlier instance not to exercise that right. Lender does not waive Lender's right to declare that Borrower is in default by making payments or incurring expenses on Borrower's behalf.

5. **Default Interest**. During any period in which an Event of Default exists under this Promissory Note, and in addition to any other rights and/or remedies available to Lender, Borrower shall pay interest on the unpaid principal amount of this Promissory Note outstanding during any such period at the rate equal to the Prime Rate in effect as of the Event of Default, multiplied by one and one-half (1.5) (but in no event less than the Prime Rate plus 10%) per annum. Notwithstanding the foregoing, in no event shall the interest rate charged hereunder exceed the highest rate permissible under any law which a court of competent jurisdiction shall, in a final determination, deem applicable hereto. In the event that such a court determines that Lender has received interest hereunder in excess of the highest rate applicable hereto, Lender shall promptly refund such excess interest to Borrower.

6. **Costs of Collection**. If this Promissory Note is placed in the hands of an attorney for collection after it shall become due for any reason, or if collected by legal proceedings, or through the probate or bankruptcy courts, then all costs of collection, including reasonable attorneys' fees, shall be added to and collectible as principal.

7. **Invalidity of Certain Provisions**. If any one or more of the provisions of this Promissory Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

8. **Payment and Presentment**. All payments of principal and interest on this Promissory Note shall be paid in the legal currency of the United States. The Borrower waives presentment for payment, protest, and notice of protest and nonpayment of this Promissory Note.

9. **Waiver; Delay**. No renewal or extension of this Promissory Note, delay in enforcing any right of the Lender under this Promissory Note, or assignment by Lender of this Promissory Note shall affect the liability or the obligations of the Borrower. All rights of the Lender under this Promissory Note are cumulative and may be exercised concurrently or consecutively at the Lender's option.

10. **No Assignment by Borrower**. The Borrower may not assign any or all of its rights or delegate any or all of its obligations under this Promissory Note without the prior written consent of the Lender. All rights of the Lender shall inure to the benefit of his successors and assigns, and such successors and assigns shall have all privileges, rights and remedies afforded the Lender hereunder or as otherwise provided by law. All obligations of the Borrower shall bind its respective successors and assigns.

11. **Applicable Law**. This Promissory Note shall be construed in accordance with the laws of the Commonwealth of Virginia.

12. **Trial by Jury**. BORROWER EXPRESSLY WAIVES THE RIGHT TO TRIAL BY JURY IN ANY LITIGATION RELATING TO, IN CONNECTION WITH, OR ARISING OUT OF, THIS PROMISSORY NOTE OR ANY OTHER DOCUMENT DELIVERED IN CONNECTION WITH THIS PROMISSORY NOTE.

*[Signature Page Follows]*

4856-7660-9637, v. 5

WITNESS the Borrower and Lender have executed this Promissory Note, as of this 30th day of June, 2023.

**BORROWER:**
**GENERALHEALTH GROUP, INC.,**

BY: _/s/ Ruth Berenstein_
    Name: Ruth Berenstein
    Title: Managing Director

**LENDER:**
**MITCHELL J. MAGID, DMD, P.C.**

BY: _/s/ Mitchell Magid_ (DocuSigned)
    Name: Mitchell J. Magid, DMD
    Title: President

## ACKNOWLEDGEMENTS

State of __Texas__          )
                         ) ss.:
COUNTY OF __Harris__   )

On the __30__ day of __June__, 2023, before me, the undersigned, personally appeared Ruth Berenstein, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.



_/s/ Ana Laura Salazar Uribe_
Notary Public

ANA LAURA SALAZAR URIBE
ELECTRONIC NOTARY PUBLIC
STATE OF TEXAS
NOTARY ID: 131757026
COMISSION EXP: OCT 11, 2026

Document Notarized using a Live Audio-Video Connection

Page **4** of **4**

4856-7660-9637, v. 5