# EXHIBIT C

## SECURITY AGREEMENT

**THIS SECURITY AGREEMENT** is made this 30th day of June, 2023 (this "Agreement") by and between MITCHELL J. MAGID, DMD, P.C., a Virginia professional corporation ("Secured Party"), and GENERALHEALTH GROUP INC., a Florida corporation ("Grantor").

### WITNESSETH:

**WHEREAS**, the parties have entered into that certain Asset Purchase Agreement, dated June 30, 2023 (the "Purchase Agreement"); and

**WHEREAS**, to induce the Secured Party to enter into the Purchase Agreement, Grantor agreed that the Purchased Assets (as defined in the Purchase Agreement) shall be collateral security for the payments required under Section 2.03 and 2.06 of the Purchase Agreement and that certain Promissory Note executed and delivered simultaneously with this Agreement (the "Promissory Note").

**NOW, THEREFORE**, in consideration of the mutual covenants, terms and conditions set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. Definitions.

    (a) Unless otherwise defined herein, terms used herein that are defined in the UCC shall have the meanings assigned to them in the UCC. However, if a term is defined in Article 9 of the UCC differently than in another Article of the UCC, the term has the meaning specified in Article 9.

    (b) For purposes of this Agreement, the following terms shall have the following meanings:

    "Collateral" has the meaning set forth in *Section 2*.

    "Event of Default" shall mean Grantor's failure to make any payment required under the Promissory Note.

    "Proceeds" means "proceeds" as such term is defined in Section 9-102 of the UCC and, in any event, shall include, without limitation, all dividends or other income from the Collateral, collections thereon or distributions with respect thereto.

    "Purchased Assets" has the meaning set forth in the Purchase Agreement.

    "Secured Obligations" has the meaning set forth in *Section 3*.

    "UCC" means the Uniform Commercial Code, as in effect from time to time in the Commonwealth of Virginia or, when the laws of any other state govern the method or manner of the perfection or enforcement of any security interest in any of the Collateral, the Uniform Commercial Code as in effect from time to time in such state.

4891-9314-8262, v. 1

**EXHIBIT C**

2. <u>Grant of Security Interest</u>. The Grantor hereby pledges and grants to the Secured Party, and hereby creates a continuing lien and security interest, in favor of the Secured Party in and to all of its right, title and interest in and to the Purchased Assets, wherever located, and all Proceeds of each of the Purchased Assets, all books and records relating to the Purchased Assets, all supporting obligations related thereto, and all accessions to, substitutions and replacements for, and rents, profits and products of, each of the foregoing, and any and all Proceeds of any insurance, indemnity, warranty or guaranty payable to the Grantor from time to time with respect to any of the foregoing (collectively, the "<u>Collateral</u>").

3. <u>Class III Assets</u>. Both parties hereby acknowledge and expressly agree that Class III assets shall not be included or deemed as a component of the Collateral set forth in clause 2.

4. <u>Secured Obligations</u>. The Collateral secures the due and prompt payment and performance of the obligations of the Grantor arising under the Promissory Note (the "<u>Secured Obligations</u>").

5. <u>Perfection of Security Interest and Further Assurances</u>.

(a)    The Grantor shall, from time to time, as may be required by the Secured Party with respect to all Collateral, immediately take all actions as may be reasonably requested by the Secured Party to perfect the security interest of the Secured Party in the Collateral, including, without limitation, with respect to all Collateral over which control may be obtained within the meaning of Sections 8-106, 9-104, 9-105, 9-106 and 9-107 of the UCC, as applicable, the Grantor shall immediately take all actions as may be reasonably requested from time to time by the Secured Party so that control of such Collateral is obtained and at all times held by the Secured Party.

(b)    The Grantor hereby irrevocably authorizes the Secured Party at any time and from time to time to file in any relevant jurisdiction any financing statements and amendments thereto that contain the information required by Article 9 of the UCC of each applicable jurisdiction for the filing of any financing statement or amendment relating to the Collateral, including any financing or continuation statements or other documents for the purpose of perfecting, confirming, continuing, enforcing or protecting the security interest granted by the Grantor hereunder, without the signature of the Grantor where permitted by law, including the filing of a financing statement describing the Collateral as all assets now owned or hereafter acquired by the Grantor, or words of similar effect. The Grantor agrees to provide all information required by the Secured Party pursuant to this Section promptly to the Secured Party upon request.

(c)    The Grantor agrees that at any time and from time to time, the Grantor will promptly execute and deliver all further instruments and documents, obtain such agreements from third parties, and take all further action, that may be necessary or desirable, or that the Secured Party may reasonably request, in order to create and/or maintain the validity, perfection or priority of and protect any security interest granted or purported to be granted hereby or to enable the Secured Party to exercise and enforce the Secured Party's rights and remedies hereunder or under any other agreement with respect to any Collateral.

6. <u>Representations and Warranties</u>. The Grantor represents and warrants as follows:

(a) At the time the Collateral becomes subject to the lien and security interest created by this Agreement, except for an Institutional Lender, the Grantor will be the sole, direct, legal and beneficial owner thereof, free and clear of any lien, security interest, encumbrance, claim, option or right of others except for the security interest created by this Agreement.

(b) The pledge of the Collateral pursuant to this Agreement creates a valid and perfected security interest in the Collateral, securing the payment and performance when due of the Secured Obligations.

(c) Grantor has full power, authority, and legal right to pledge the Collateral pursuant to this Agreement.

(d) This Agreement, the Purchase Agreement, and the Promissory Note have been duly authorized, executed and delivered by the Grantor and constitute a legal, valid and binding obligation of the Grantor enforceable in accordance with their terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors' rights generally and subject to equitable principles (regardless of whether enforcement is sought in equity or at law).

(e) No authorization, approval, or other action by, and no notice to or filing with, any governmental authority or regulatory body is required for the pledge by the Grantor of the Collateral pursuant to this Agreement or for the execution and delivery of the Purchase Agreement, Promissory Note, and this Agreement by the Grantor or the performance by the Grantor of the Grantor's obligations thereunder.

(f) The execution and delivery of the Purchase Agreement, Promissory Note, and this Agreement by the Grantor and the performance by the Grantor of the Grantor's obligations thereunder, will not violate any provision of any applicable law or regulation, any order, judgment, writ, award or decree of any court, arbitrator or governmental authority, domestic or foreign, applicable to the Grantor or any of the Grantor's property, or the organizational or governing documents of the Grantor or any agreement or instrument to which the Grantor is party or by which any Grantor or such property is bound.

(g) The Grantor has taken all action required on their part for control (as defined in Sections 8-106, 9-104, 9-105, 9-106 and 9-107 of the UCC, as applicable) to have been obtained by the Secured Party over all Collateral with respect to which such control may be obtained pursuant to the UCC. No person other than the Secured Party has control or possession of all or any part of the Collateral.

7. <u>Covenants</u>. The Grantor covenants as follows:

(a) The Grantor shall, at its own cost and expense, defend title to the Collateral and the lien and security interest of the Secured Party therein against the claim of any person claiming against or through the Grantor and shall maintain and preserve such perfected security interest for so long as this Agreement shall remain in effect.

(b) Except in the ordinary course of business, the Grantor will not sell, offer to sell, dispose of, convey, assign or otherwise transfer, grant any option with respect to, restrict, or grant,

create, permit or suffer to exist any mortgage, pledge, lien, security interest, option, right of first offer, encumbrance or other restriction or limitation of any nature whatsoever on, any of the Collateral or any interest therein.

(c)     The Grantor will keep the Collateral in good order and repair and will not use the same in violation of law or any policy of insurance thereon. The Grantor will permit the Secured Party, or the Secured Party's designee, to inspect the Collateral at any reasonable time, wherever located.

(d)     The Grantor will pay promptly when due all taxes, assessments, governmental charges, and levies upon the Collateral or incurred in connection with the use or operation of the Collateral or incurred in connection with this Agreement.

8.  Remedies upon Default.

(a)     If any Event of Default shall have occurred and be continuing beyond any applicable cure periods, the Secured Party, without any other notice to or demand upon the Grantor, may assert all rights and remedies of a secured party under the UCC or other applicable law, including, without limitation, the right to take possession of, hold, collect, sell, lease, deliver, grant options to purchase or otherwise retain, liquidate or dispose of all or any portion of the Collateral. If notice prior to disposition of the Collateral or any portion thereof is necessary under applicable law, written notice mailed to the Grantor at the notice address as provided in **Section 11** hereof ten (10) days prior to the date of such disposition shall constitute reasonable notice. So long as the sale of the Collateral is made in a commercially reasonable manner, the Secured Party may sell such Collateral on such terms and to such purchaser(s) as the Secured Party in the Secured Party's absolute discretion may choose, without assuming any credit risk and without any obligation to advertise or give notice of any kind other than that necessary under applicable law. Without precluding any other methods of sale, the sale of the Collateral or any portion thereof shall have been made in a commercially reasonable manner if conducted in conformity with reasonable commercial practices of creditors disposing of similar property. At any sale of the Collateral, if permitted by applicable law, the Secured Party may be the purchaser, licensee, assignee or recipient of the Collateral or any part thereof and shall be entitled, for the purpose of bidding and making settlement or payment of the purchase price for all or any portion of the Collateral sold, assigned or licensed at such sale, to use and apply any of the Secured Obligations as a credit on account of the purchase price of the Collateral or any part thereof payable at such sale. To the extent permitted by applicable law, the Grantor waives all claims, damages, and demands it may acquire against the Secured Party arising out of the exercise by it of any rights hereunder. The Grantor hereby waives and releases to the fullest extent permitted by law any right or equity of redemption with respect to the Collateral, whether before or after sale hereunder, and all rights, if any, of marshalling the Collateral and any other security for the Secured Obligations or otherwise. At any such sale, unless prohibited by applicable law, the Secured Party or any custodian may bid for and purchase all or any part of the Collateral so sold free from any such right or equity of redemption. Neither the Secured Party nor any custodian shall be liable for failure to collect or realize upon any or all of the Collateral or for any delay in so doing, nor shall it be under any obligation to take any action whatsoever with regard thereto. The Grantor agrees that it would not be commercially unreasonable for the Secured Party to dispose of the Collateral or any portion thereof by utilizing internet sites that provide for the auction of assets of the type included in the

Collateral or that have the reasonable capability of doing so, or that match buyers and sellers of assets. The Secured Party shall not be obligated to clean-up or otherwise prepare the Collateral for sale.

(b) If any Event of Default shall have occurred and be continuing, any cash held by the Secured Party as Collateral and all cash Proceeds received by the Secured Party in respect of any sale of, collection from, or other realization upon all or any part of the Collateral shall be applied in whole or in part by the Secured Party to the payment of expenses incurred by the Secured Party in connection with the foregoing or incidental to the care or safekeeping of any of the Collateral or in any way relating to the Collateral or the rights of the Secured Party hereunder, including reasonable attorneys' fees, and the balance of such proceeds shall be applied or set off against all or any part of the Secured Obligations in such order as the Secured Party shall elect. Any surplus of such cash or cash Proceeds held by the Secured Party and remaining after payment in full of all the Secured Obligations shall be paid over to the Grantor or to whomsoever may be lawfully entitled to receive such surplus. The Grantor shall remain liable for any deficiency if such cash and the cash Proceeds of any sale or other realization of the Collateral are insufficient to pay the Secured Obligations and the fees and other charges of any attorneys employed by the Secured Party to collect such deficiency.

(c) If the Secured Party shall determine to exercise the Secured Party's rights to sell all or any of the Collateral pursuant to this Section, the Grantor agrees that, upon request of the Secured Party, the Grantor will, at the Grantor's own expense, do or cause to be done all such acts and things as may be necessary to make such sale of the Collateral or any part thereof valid and binding and in compliance with applicable law.

9. <u>No Waiver and Cumulative Remedies</u>. The Secured Party shall not by any act (except by a written instrument pursuant to ***Section 10***), delay, indulgence, omission or otherwise be deemed to have waived any right or remedy hereunder or to have acquiesced in any Event of Default. All rights and remedies herein provided are cumulative and are not exclusive of any rights or remedies provided by law.

10. <u>Security Interest Absolute</u>. The Grantor hereby waives demand, notice, protest, notice of acceptance of this Agreement, notice of loans made, credit extended, Collateral received or delivered, or other action taken in reliance hereon and all other demands and notices of any description. All rights of the Secured Party and liens and security interests hereunder, and all Secured Obligations of the Grantor hereunder, shall be absolute and unconditional irrespective of:

(a) any change in the time, place or manner of payment of, or in any other term of, the Secured Obligations, or any rescission, waiver, amendment or other modification of the Purchase Agreement, Promissory Note, this Agreement or any other agreement, including any increase in the Secured Obligations resulting from any extension of additional credit or otherwise; or

(b) any taking, exchange, substitution, release, impairment or non-perfection of any Collateral or any other collateral, or any taking, release, impairment, amendment, waiver or other modification of any guaranty, for all or any of the Secured Obligations; or

(c) any manner of sale, disposition or application of proceeds of any Collateral or any other collateral or other assets to all or part of the Secured Obligations; or

(d) any default, failure or delay, willful or otherwise, in the performance of the Secured Obligations; or

(e) any defense, set-off or counterclaim (other than a defense of payment or performance) that may at any time be available to, or be asserted by, the Grantor against the Secured Party; or

(f) any other circumstance (including, without limitation, any statute of limitations) or manner of administering the payment of the Purchase Agreement or Promissory Note, or any existence of or reliance on any representation by the Secured Party that might vary the risk of the Grantor or otherwise operate as a defense available to, or a legal or equitable discharge of, the Grantor or any other Grantor, guarantor or surety.

11. <u>Amendments</u>. None of the terms or provisions of this Agreement may be amended, modified, supplemented, terminated or waived, and no consent to any departure by the Grantor therefrom shall be effective unless the same shall be in writing and signed by the Secured Party and the Grantor, and then such amendment, modification, supplement, waiver or consent shall be effective only in the specific instance and for the specific purpose for which made or given.

12. <u>Addresses for Notices</u>. All notices and other communications provided for in this Agreement shall be in writing and shall be given in the manner and become effective as set forth in the Promissory Note, and addressed to the respective parties at their addresses as set forth in the Promissory Note or as to either party at such other address as shall be designated by such party in a written notice to each other party.

13. <u>Continuing Security Interest; Further Actions</u>. This Agreement shall create a continuing lien and security interest in the Collateral and shall (a) subject to **Section 13**, remain in full force and effect until payment and performance in full of the Secured Obligations, (b) be binding upon the Grantor, its successors and assigns, and (c) inure to the benefit of the Secured Party and his successors, transferees and assigns; *provided that* the Grantor may not assign or otherwise transfer any of their rights or obligations under this Agreement without the prior written consent of the Secured Party.

14. <u>Termination; Release</u>. On the date on which all Secured Obligations have been paid and performed in full, the Secured Party will, at the request and sole expense of the Grantor. (a) duly assign, transfer and deliver to or at the direction of the Grantor (without recourse and without any representation or warranty) such of the Collateral as may then remain in the possession of the Secured Party, together with any monies at the time held by the Secured Party hereunder, and (b) execute and deliver to the Grantor a proper instrument or instruments acknowledging the satisfaction and termination of this Agreement.

15. <u>Governing Law</u>. This Agreement and any claim, controversy, dispute or cause of action (whether in contract or tort or otherwise) based upon, arising out of or relating to this Agreement shall be governed by, and construed in accordance with, the laws of the Commonwealth of Virginia.

16. <u>Counterparts</u>. This Agreement and any amendments, waivers, consents or supplements hereto may be executed in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all taken together shall constitute a single contract. Delivery of an executed counterpart of a signature page to this Agreement by facsimile or in electronic (i.e., "pdf") format shall be effective as delivery of a manually executed counterpart of this Agreement. This Agreement, the Purchase Agreement, and the Promissory Note collectively constitute the entire contract among the parties with respect to the subject matter hereof and supersede all previous agreements and understandings, oral or written, with respect thereto.

*[SIGNATURE PAGE FOLLOWS]*

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first above written.

**Secured Party:**
Mitchell J. Magid, DMD, P.C.

By _/s/ Mitchell Magid (DocuSigned)_
Name: Mitchell J Magid DMD
Title: President

**Grantor:**
GeneralHealth Group Inc.

By _/s/ RUTH BERENSTEIN (DocuSigned)_
Name: Ruth Berenstein
Title: Managing Director