# EXHIBIT F

## LEASE AGREEMENT

**THIS LEASE AGREEMENT** (this "Lease") is made as of this 30th day of June, 2023 (the "Effective Date"), by and between **MAGID ENTERPRISES, LLC**, a Virginia limited liability company whose address is 1612 Graves Mill Rd, Lynchburg, Virginia, 24502 (hereinafter called "Landlord"); and **GENERALHEALTH GROUP INC.**, a Florida Corporation whose address is 244 5th Ave, L270, New York, NY, 10001 (hereinafter called "Tenant").

1. **DESCRIPTION.** Landlord hereby leases to Tenant and Tenant hereby leases from Landlord that certain "Building", consisting of approximately 4,155 rentable square feet located at 1612 Graves Mill Road, Lynchburg, Virginia 24502 (hereinafter called the "Premises"). Tenant acknowledges that it has inspected the Premises and is fully familiar with its condition and is leasing the same in an "AS IS" condition.

2. **TERM.** The term of this Lease and the demise of the Premises shall be for ten (10) years beginning on Effective Date (also referred to herein as the "Commencement Date") and ending at on the last day of the month in which the ten (10) year anniversary of the Commencement Date occurs (hereinafter called the "Initial Term"). Upon expiration of the Initial Term provided that no uncured Event of Default is then existing, Tenant may elect to renew this Lease for two (2) five (5) year period(s) (each a "Extension Term") (the Initial Term and the Extension Terms, if exercised, collectively referred to herein as the "Term") by giving Landlord written notice of its intent to renew at least one hundred eighty (180) days prior to the expiration date of the current term.

3. **RENT.** The Tenant shall pay to the Landlord during each year of the Initial Term "Basic Rent" in the amount of $87,255.00 per annum, to be paid in monthly increments of $7,271.25 ("Monthly Basic Rent") per month payable in such coin or currency of the United States of America as at the time of payment shall be legal tender for the payment of public and private debts. For the duration of the Term, Basic Rent shall increase at a rate of three percent (3%) per annum. The Monthly Basic Rent shall be payable in advance on the first day of each calendar month during the Term except that a proportionately lesser sum may be paid for the first and last months of the Term of this Lease if the Term commences on a date other than the first day of the month, in accordance with the provisions of this Lease herein set forth. All sums payable by Tenant under this Lease in addition to Basic Rent shall be collectively known as "Additional Rent"; Basic Rent and Additional Rent shall be collectively referred to as "Rent". It is the intention of Landlord and Tenant that, except as otherwise set forth herein, the Rent and other sums and charges provided herein shall be absolutely net to Landlord. For avoidance of doubt, Additional Rent shall include all property, community, and/or HOA fees charged to Landlord from time to time.

4. **USE.** Tenant shall use and occupy the Premises for the operation of an oral surgery and implants practice and for no other purpose.

5. **CARE AND REPAIR OF PREMISES.** Tenant covenants to commit no act of waste and maintain in good condition the Premises and the fixtures and appurtenances therein, and shall, in the use and occupancy of the Premises, comply with all present and future laws, orders and regulations of the federal, state and municipal governments or any of their departments affecting the Premises and with any and all environmental requirements resulting from the Tenant's use of the Premises; this covenant to survive the expiration or sooner termination of the Lease. Except for those repairs and replacements that are the obligation of Landlord under this Lease, Tenant shall promptly make all repairs, replacements and perform all maintenance to the Premises (both interior and exterior), including but not limited to all necessary repairs, replacement and maintenance to the plumbing, electrical, heating, air conditioning and

mechanical systems, windows, and doors, as well as to the parking area, walkway and driveway when necessary to keep same in good and operable condition. Tenant shall also be responsible for all landscaping to keep the exterior of the Premises in a neat and orderly condition and be responsible for all snow and ice removal of the walkways, driveway and parking area. Landlord shall maintain, repair and keep in good order and condition the foundation, the roof, any roof coverings, the structural portions of the floors and exterior walls of the Building. All improvements made by Tenant to the Premises, which are so attached to the Premises that they cannot be removed without material injury to the Premises, shall become the property of Landlord upon installation, at Landlord's option. Not later than the last day of the Term, Tenant shall, at Tenant's expense, remove all Tenant's personal property and those improvements made by Tenant which have not become the property of Landlord and repair all injury done by or in connection with the installation or removal of said property, and leave all of the Building's systems in good working order. All other property of Tenant remaining on the Premises after the last day of the Term of this Lease shall be conclusively deemed abandoned and may be removed by Landlord, and Tenant shall reimburse Landlord for the cost of such removal. Landlord may have any such property stored at Tenant's risk and expense.

6. **ALTERATIONS, ADDITIONS OR IMPROVEMENTS**. Tenant shall not, without first obtaining the written consent of Landlord, make any alterations, additions or improvements in, to or about the Premises, including as to signage. All alterations, additions or improvements made by Tenant to the Premises shall be performed in compliance with applicable laws.

7. **ACTIVITIES INCREASING FIRE INSURANCE**. Tenant shall not do or permit anything to be done in or about the Premises nor bring or keep anything therein which will in any way increase the existing rate of or affect any property or other insurance upon the Building or any of its contents or cause a cancellation of any insurance policy covering said Building or any part thereof or any of its contents.

8. **ASSIGNMENT AND SUBLEASE**.

(A) <u>Transfer Defined</u>. Any sale, pledge, encumbrance, conveyance, mortgage, assignment or transfer of this Lease or any interest of Tenant therein, any sublease of all or part of the Premises, and any use or occupancy of all or part of the Premises by a person or entity other than Tenant (such as, but not limited to, licensees or concessionaires) shall constitute a "<u>Transfer</u>" of this Lease.

(B) <u>Consent Required</u>.

(i) Except as set forth in Section 8, Tenant shall not voluntarily, involuntarily, or by operation of law Transfer this Lease without first obtaining the prior written consent of Landlord which, except as otherwise expressly set forth in this Section, may be withheld in Landlord's sole discretion. Any consent by Landlord shall apply only to the specific Transfer thereby authorized and shall not constitute a waiver of the necessity for obtaining Landlord's prior written consent to any other Transfer.

(ii) In the event of any Transfer of this Lease (whether or not permitted by this Lease), Tenant remains liable for, and is not released or discharged from, its obligations under this Lease.

(iii) In the event of any Transfer of this Lease to which Landlord has not consented in writing, Landlord may nevertheless collect Minimum Rent and Additional Rent from the Transferee and apply the net amount collected to the sums due under this Lease, and no such collection shall be deemed a consent to the Transfer, a waiver of any breach of this Lease by Tenant, an acceptance of the Transferee, or

2

release Tenant from or modify Tenant's obligations under this Lease. No consent by Landlord to any Transfer of this Lease shall be construed as a consent by Landlord to the use of the Premises for any use other than the Permitted Use.

(C) Tenant Entity. If Tenant is a corporation, partnership, limited liability company, or other entity, any dissolution, merger, consolidation, restructuring or other reorganization, or any pledge of or any issue, sale or other transfer of a controlling percentage of the ownership interests of Tenant (whether in a single transaction or cumulatively), shall constitute a Transfer of this Lease. The term "controlling percentage" means the ownership or control of more than fifty percent (50%) of the controlling ownership interests of Tenant, whether such ownership or control is direct or indirect through another person or entity.

(D) Permitted Assignment. Landlord's consent to an assignment of the Lease to the purchaser in connection with and as part of the sale of all or substantially all of Tenant's assets or of all or substantially all of the ownership interests of Tenant to that purchaser shall not be unreasonably withheld, conditioned or delayed provided each of the following conditions are met:

(i) Tenant is not in default of the Lease beyond the applicable notice and cure period, if any;

(ii) Landlord receives at least thirty (30) days prior written notice of the assignment;

(iii) Tenant provides Landlord with such information and documents concerning the transaction and the direct and indirect parties thereto as Landlord may reasonably request;

(iv) the assignee agrees in writing, in form and substance acceptable to Landlord in its reasonable discretion, to assume, perform and abide by all of the terms and conditions of the Lease;

(v) the financial condition, creditworthiness, operating experience, and current business operations of the assignee are acceptable to Landlord in its commercially reasonable business judgment;

(vi) the assignee provides such additional security as is acceptable to Landlord in its commercially reasonable business judgment; and

(vii) Landlord is reimbursed for the reasonable attorney's fees, costs and expenses incurred in connection with the transaction.

9. **COMPLIANCE WITH RULES AND REGULATIONS.** Tenant shall observe and comply with the rules and regulations as Landlord may prescribe, on written notice to Tenant, for the safety, care and cleanliness of the Building.

10. **WAIVERS OF SUBROGATION.** In the event of any loss or damage to the Building, the Premises and/or any contents, each party waives all claims against the other for any such loss or damage and each party shall look only to any insurance which it has obtained to protect against such loss. Each party shall obtain, for each policy of such insurance, provisions waiving any claim against the other party for loss or damage within the scope of such insurance.

11. **NO WAIVER OF COVENANTS OR CONDITIONS; AMENDMENT.** The failure of either party to insist on strict performance of any covenant or condition hereof, or to exercise any option herein contained, shall not be construed as a waiver of such covenant or condition or option in any other

instance. This Lease cannot be changed or terminated orally, but only by an amendment in writing signed by both Landlord and Tenant.

12.   **RIGHT TO CURE TENANT'S BREACH.**   If Tenant breaches any covenant or condition of this Lease, Landlord may (but shall not be obligated to), on reasonable notice to Tenant (except that no notice need be given in case of emergency), enter onto the Premises and cure such breach at the expense of Tenant and the reasonable amount of all expenses, including attorney's fees, incurred by Landlord in so doing (whether paid by Landlord or not) shall be deemed Additional Rent payable on demand.

13.   **LIENS.** Tenant shall not do any act, or make any contract, which may create any lien or other encumbrance upon any portion of the Premises or Building. Tenant shall, at its sole cost, remove any liens filed against the Premises within thirty (30) days after receipt of notice of such lien.

14.   **INSURANCE.**

(A) Tenant covenants to provide on or before the Commencement Date a commercial policy of general liability insurance naming Landlord as an additional named insured, insuring Tenant and Landlord against any liability commonly insured against and occasioned by accident resulting from any act or omission on or about the Premises and any appurtenances thereto during the Term as well as all risk against loss to Tenant's fixtures, equipment, furnishings, merchandise, and other contents in the Premises, for the full replacement value of said items. Such policies are to be written by an insurance company qualified to do business in the Commonwealth of Virginia reasonably satisfactory to Landlord. The policy shall be with limits of not less than One Million and 00/100 ($1,000,000.00) Dollars in respect of any one person, in respect of any one accident, and in respect of property damage and Three Million and 00/100 ($3,000,000.00) Dollars in aggregate limits. Landlord shall be permitted to periodically increase the aforementioned limits during the Term to ensure said limits meet with what is considered market at the time. At least thirty (30) days prior to the expiration or termination date of any policy, Tenant shall deliver a renewal or replacement policy with proof of the payment of the premium therefore.

(B)   Tenant covenants and represents, said representation being specifically designed to induce Landlord to execute this Lease, that Tenant's personal property and fixtures and any other items which Tenant may bring to the Premises or which may be under Tenant's care, custody and control which may be subject to any claim for damages or destruction due to Landlord's negligence shall be fully insured by a policy of insurance covering all risks which policy shall specifically provide for a waiver of subrogation for Landlord via endorsement or otherwise.

(C)   If the acts of Tenant or its employees or agents shall increase the rate of insurance which Landlord carries with respect to the Building such increase shall be immediately paid by Tenant as Additional Rent.

(D)   At all times during the Term, Landlord shall maintain hazard and/or "all-risk" coverage insuring the Building and all improvements (other than those covered by Tenant's insurance pursuant to Section (B) above). Tenant shall reimburse Landlord for the costs of Landlord's insurance on the Building as Additional Rent within ten (10) days after Landlord presenting an invoice therefore.

15.   **SECURITY DEPOSIT.** Tenant shall deposit with Landlord on the Effective Date the sum of $2,000.00 as security for the performance of Tenant's obligations under this Lease, including without limitation, the surrender of possession of the Premises to Landlord as herein provided. If

24-11860-jlg   Doc 11-6   Filed 01/23/25   Entered 01/23/25 14:10:11   Exhibit F
Pg 6 of 14

DocuSign Envelope ID: 2860B51E-2DBF-4217-B914-F9DF44437DF5

Landlord applies any part of said deposit to cure any default of Tenant, Tenant shall on demand deposit with Landlord the amount so applied so that Landlord shall have the full deposit on hand at all times during the Term of this Lease. Landlord shall not be required to segregate the Security Deposit from Landlord's funds and may co-mingle these funds with other funds of Landlord. The security deposit shall be paid to Tenant within thirty (30) days after Tenant's obligations under this Lease have been fulfilled.

16. **NOTICES.** Any notice by either party to the other shall be in writing and shall be deemed to have been duly given only if (a) delivered personally or (b) sent by registered mail or certified mail, return receipt requested, in a postpaid envelope or (c) sent by recognized overnight courier service such as Federal Express, addressed if to Tenant, at the Premises; if to Landlord, at Landlord's address as set forth above or to either at such other address as Tenant or Landlord, respectively, may designate in writing. Notice shall be deemed to have been duly given upon its receipt or rejection as evidenced by a bill of lading or return receipt or upon delivery if personally served. Either party may update its notice address by written notice given in accordance with the requirements of this Section.

17. **RIGHT TO INSPECT, REPAIR AND SHOW PREMISES.** Landlord may enter the Premises but shall not be obligated to do so (except as required by any specific provision of this Lease) at any reasonable time on reasonable notice to Tenant (except that no notice need be given in case of emergency) for the purpose of inspection or the making of such repairs, replacement or additions, in, to, on and about the Premises and/or the Building, as Landlord deems necessary or desirable. Landlord may show the Premises to prospective purchasers, mortgagees and, during the final 6 months of the Term, prospective tenants during business hours on reasonable notice to Tenant. Landlord shall use commercially reasonable efforts to minimize disruption to Tenant's business during such entries into the Premises.

18. **NO OTHER REPRESENTATIONS.** No representations or promises shall be binding on the parties hereto except those representations and promises contained herein.

19. **HOLDING OVER.** If Tenant shall remain in the Premises after the expiration of the Term or fail to surrender the Premises at the expiration or sooner termination of the Term in the condition required by this Lease, such holding over shall not constitute a renewal or extension of this Lease. In either such event, the Landlord may, at its option, elect to treat the Tenant as one who has not removed at the end of its Term, and thereupon be entitled to all the remedies against the Tenant provided by law in that situation, except as to duration thereof, in addition to all rights and remedies afforded to Landlord at law and in equity, Tenant shall pay 150% of Monthly Basic Rent in advance and shall also pay all damages sustained by Landlord from any loss or liability resulting from such holding over and delay in surrender.

20. **QUIET ENJOYMENT.** Landlord covenants that if, and so long as, Tenant pays the Basic Rent, and Additional Rent as herein provided, and performs the covenants hereof, Tenant have the right to peaceably and quietly have, hold and enjoy the Premises for the Term herein mentioned, subject to the provisions of this Lease and to any mortgage or deed of trust to which this Lease shall be subordinate.

21. **DEFAULT.** Tenant shall be in default upon the occurrence of any of the following acts (each an "Event of Default"): (a) the Tenant shall default in making any payment of Basic Rent or Additional Rent within five (5) days after same shall become due and payable; or (b) the Tenant shall default in the performance of or compliance with any of the other covenants, agreements, terms or conditions of this Lease to be performed by the Tenant (other than any default curable by payment of money), and such default shall continue for a period of ten (10) days after notice thereof from the

5

Landlord; or (c) the Tenant shall file a voluntary petition in bankruptcy or shall be adjudicated a bankrupt or insolvent; or (d) if, within sixty (60) days after the filing of an involuntary petition in bankruptcy against the Tenant, such proceeding shall not have been dismissed, or if, within possession is not restored within sixty (60) days after the appointment of a receiver or trustee, then, and in any such event, and during the continuance thereof, the Landlord may, at its option, then or thereafter while any such Event of Default shall continue and notwithstanding the fact that the Landlord may have any other remedy hereunder or at law or in equity, by notice to the Tenant, designate a date, not less than three (3) days after the giving of such notice, on which this Lease shall terminate; and thereupon, on such date the Term of this Lease and the estate hereby granted shall expire and terminate.

22. **REMEDIES ON DEFAULT.** If this Lease is terminated as provided in Section 21 or as permitted by law, the Tenant shall peaceably quit and surrender the Premises to the Landlord, and the Landlord may, without further notice, enter upon, re-enter, possess and repossess the same by summary proceedings, ejectment or other legal proceedings, and again have, repossess and enjoy the same as if this Lease had not been made, and, in any such event, neither the Tenant nor any person claiming through or under the Tenant by virtue of any law or an order of any court shall be entitled to possession or to remain in possession of the Premises. Tenant shall pay to the Landlord upon the applicable rent payment dates following the date of such re-entry and including the date for the expiration of the Term of this Lease in effect immediately prior to such re-entry, the sums of money which would have been payable by the Tenant as Monthly Basic Rent and Additional Rent hereunder on such rent payment dates if the Landlord had not re-entered and resumed possession of the Premises. The Landlord's remedies hereunder are in addition to any remedy allowed by law.

23. **UTILITIES.** During the Term hereof, Tenant shall cause all utilities to be put into the name of Tenant and Tenant shall thereafter promptly pay for the cost of all utility charges, including by way of example and not by way of limitation, the cost of electricity, water, sewer, trash removal expenses, gas and oil, imposed on the Premises. Tenant's obligation to pay utility charges accruing during the Term shall survive the termination or sooner expiration of this Lease.

24. **TAXES.** Tenant hereby agrees to be responsible for all real estate taxes and installments of assessments imposed upon the Premises during the Term and will pay same directly to taxing authority prior to delinquency and provide Landlord with proof of each such payment.

25. **WAIVER OF TRIAL BY JURY.** IT IS MUTUALLY AGREED BY AND BETWEEN LANDLORD AND TENANT THAT THE RESPECTIVE PARTIES HERETO SHALL AND THEY HEREBY DO WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING BROUGHT BY EITHER OF THE PARTIES HERETO AGAINST THE OTHER IN ANY MATTERS WHATSOEVER ARISING OUT OF OR IN ANY WAY CONNECTED WITH THIS LEASE, THE RELATIONSHIP OF LANDLORD AND TENANT, TENANT'S USE OR OCCUPANCY OF THE PREMISES, AND/OR ANY CLAIM OF INJURY OR DAMAGE, AND ANY EMERGENCY STATUTORY OR ANY OTHER STATUTORY REMEDY. SHOULD LANDLORD SEEK RECOURSE TO EQUITY TO ENFORCE ANY OF ITS RIGHTS UNDER THIS LEASE, TENANT AGREES TO WAIVE ANY DEFENSE WHICH IT MIGHT OTHERWISE HAVE THAT LANDLORD HAS ANY ADEQUATE REMEDY AT LAW. TENANT FURTHER AGREES THAT IT SHALL NOT INTERPOSE ANY COUNTERCLAIM OR SETOFF IN A SUMMARY PROCEEDING OR IN ANY ACTION BASED, IN WHOLE OR IN PART, ON NONPAYMENT OF BASIC RENT OR ADDITIONAL RENT.

26. **LATE CHARGE.** Anything in this Lease to the contrary notwithstanding, at Landlord's option, Tenant shall pay a "<u>Late Charge</u>" of eight (8%) percent of any installment of Basic Rent or

Additional Rent paid more than five (5) days after the due date thereof to cover the extra expense involved in handling delinquent payments.

27. **SECTION HEADINGS.** The section headings in this Lease and position of its provisions are intended for convenience only and shall not be taken into consideration in any construction or interpretation of this Lease or any of its provisions.

28. **APPLICABILITY TO HEIRS AND ASSIGNS.** The provisions of this Lease shall apply to, bind and inure to the benefit of Landlord and Tenant, and their respective heirs, successors, legal representatives and assigns. It is understood that the term "Landlord" as used in this Lease means only the owner, a mortgagee in possession or a term lessee of the Building, so that, in the event of any sale of the Building or of any lease thereof, or if a mortgagee shall take possession of the Building, Landlord named herein shall be and hereby is entirely freed and relieved of all covenants and obligations of Landlord hereunder accruing thereafter, and it shall be deemed without further agreement that the purchaser, the term lessee of the Building, or the mortgagee in possession has assumed and agreed to carry out any and all covenants and obligations of Landlord hereunder.

29. **PERSONAL LIABILITY.** Notwithstanding anything to the contrary provided in this Lease, it is specifically understood and agreed, such agreement being a primary consideration for the execution of this Lease by Landlord, that there shall be absolutely no personal liability on the part of Landlord, its constituent members, (to include but not be limited to officers, directors, partners and trustees), their respective successors, assigns or any mortgagee in possession (for the purposes of this Section, collectively referred to as "Landlord"), with respect to any of the terms, covenants and conditions of this Lease, and that Tenant shall look solely to the equity of Landlord in the Building for the satisfaction of each and every remedy of Tenant in the event of any breach by Landlord of any of the terms, covenants and conditions of this Lease to be performed by Landlord, such exculpation of liability to be absolute and without any exceptions whatsoever.

30. **NO OPTION.** The submission of this Lease for examination does not constitute a reservation of, or option for, the Premises, and this Lease becomes effective as a Lease only upon execution and delivery thereof by Landlord and Tenant.

31. **LANDLORD'S EXCULPATION/ TENANT INDEMNIFICATION.**

(A) Landlord shall not be liable to Tenant for any loss suffered by Tenant under any circumstances, including, but not limited to: (i) that arising from the negligence of Landlord, its agents, servants, invitees, contractors or subcontractors, or from defects, errors or omissions in the construction or design of the Premises and/or the Building including the structural and nonstructural portions thereof; or (ii) for loss of or injury to Tenant or to Tenant's property or that for which Tenant is legally liable from any cause whatsoever, including but not limited to theft or burglary; or (iii) for that which results from or is incidental to the furnishing of or failure to furnish or the interruption in connection with the furnishing of any service which Landlord is obligated to furnish pursuant to this Lease; or (iv) for that which results from any inspection, repair, alteration or addition or the failure thereof undertaken or failed to be undertaken by Landlord; or (v) for any interruption to Tenant's business, however occurring.

(B) Tenant shall indemnify and save harmless Landlord and its agents against and from (a) any and all claims (i) arising from (x) the conduct or management by Tenant, its subtenants, licensees, its or their employees, agents, contractors or invitees on the Premises or of any business therein, or (y) any work or thing whatsoever done, or any condition created (other than by Landlord for Landlord's account)

7

DocuSign Envelope ID: 2860B51E-2DBF-4217-B914-F9DF44437DF5

in or about the Premises during the Term of this Lease or during the period of time, if any, prior to the Commencement Date that Tenant may have been given access to the Premises, or (ii) arising from any negligent or otherwise wrongful act or omission of Tenant or any of its subtenants or licensees or its or their employees, agents, contractors or invitees, and (b) all costs, expenses and liabilities incurred in or in connection with each such claim or action or proceeding brought thereon.  In case any action or proceeding brought against Landlord by reason of any such claim, Tenant, upon notice from Landlord, shall resist and defend such action or proceeding.  The provisions of this Section shall survive the expiration or sooner termination of this Lease.

32.  **SUBORDINATION OF LEASE/ESTOPPEL CERTIFICATE.**  This Lease and any option contained herein shall be subject and automatically subordinate to any underlying leases, any mortgages (or deeds of trust) or any deeds which may now or hereafter affect the real property of which the Premises form a part, and also to all renewals, modifications, consolidations and replacements of said underlying leases and said mortgages or trust deeds. Although no instrument or act on the part of Tenant shall be necessary to effectuate such subordination, Tenant shall, nevertheless, within ten (10) days after request, execute and deliver such further commercially reasonable instruments confirming such subordination of this Lease as may be desired by the holders of said mortgage or trust deed or by any of the lessors under such underlying leases.  Tenant hereby appoints Landlord attorney-in-fact, irrevocably, to execute and deliver any such instrument for Tenant.  If any underlying lease to which this Lease is subject terminates, Tenant shall, on timely request, attorn to the owner of the reversion.

Tenant shall, at any time upon ten (10) days prior written notice by Landlord, execute, acknowledge and deliver to Landlord, a certificate provided by Landlord certifying that: (a) this Lease is unmodified and in full force and effect (or in full force and effect as modified, setting forth the modifications); (b) the dates to which the Annual Basic Rent and Additional Rent required to be paid hereunder have been paid; (c) if there is a default by Landlord; (d) if there are set-offs or defenses against the enforcement of this Lease of any nature whatsoever that Tenant may possess; (e) if Tenant has discharged, other than in accordance with law, any Hazardous Substances at the Premises or at the Building in violation of Environmental Laws (as hereinafter defined); (f) certifying that the Lease and other related documents have been duly authorized by Tenant; (g) certifying the date of commencement and expiration of the Lease; and (h) certifying as to such other matters as may be reasonably requested by Landlord or its mortgagee.

33.  **BROKER.**  Landlord and Tenant each represent and warrant to the other that no broker was involved in bringing about the Lease.  Landlord and Tenant each agree to indemnify and hold the other harmless from and against any and all claims of brokers to include expenses arising therefrom resulting from conduct attributable to them inconsistent with this representation.

34.  **ACCORD AND SATISFACTION.**  No payment by Tenant or receipt by Landlord of a lesser amount than the Monthly Basic Rent and additional charges payable hereunder shall be deemed to be other than a payment on account of the earliest stipulated Monthly Basic Rent and Additional Rent, nor shall any endorsement or statement on any check or any letter accompanying any check or payment for Basic Rent or Additional Rent be deemed an accord and satisfaction, and Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of such Basic Rent and Additional Rent or pursue any other remedy provided herein or by law.

35.  **PREVAILING PARTY/LEGAL FEES.**  In any action to enforce any of the provisions of this Lease, the prevailing party shall be entitled to recover from the other party all of its reasonable costs and expenses including, but not limited to, costs of collection, attorneys' fees, and expert fees incurred in

8

any such action. Additionally, Tenant shall reimburse Landlord for all legal fees incurred by Landlord in enforcing the terms of or arising out of or in connection with this Lease.

36. **CASUALTY/CONDEMNATION.** If any portion of the Premises or Building is taken under eminent domain or condemnation proceedings, or if suit or other action shall be instituted for the taking or condemnation thereof, or if in lieu of any formal condemnation proceedings or actions, the Landlord grants an option to purchase and or sells and conveys the Building or any portion thereof, to the governmental or other public authority, agency, body or public utility seeking to take the Building or any portion thereof, then this Lease, at the option of the Landlord, will terminate, and the term hereof will end as of such date as the Landlord fixes by notice in writing. The Tenant will have no claim or right to claim or be entitled to any portion of any amount which may be awarded as damages or paid as the result of such condemnation proceedings or paid as the purchase price for such option, sale or conveyance in lieu of formal condemnation proceedings. The Tenant may, however, file a claim for any taking of fixtures and improvements owned by the Tenant, and for moving expenses. Except as provided in the preceding sentence, all rights of the Tenant to damages, if any, are hereby assigned to the Landlord. The Tenant will execute and deliver any instruments, at the expense of the Landlord, as may be deemed necessary to expedite any condemnation proceedings or to effectuate a proper transfer of title to such governmental or other public authority, agency, body or public utility seeking to take or acquire the Building or any portion thereof. The Tenant will vacate the Premises, remove all of the Tenant's personal property therefrom and deliver up peaceable possession thereof to the Landlord or to such other party designated by the Landlord. The Tenant will repay the Landlord for such costs, expenses, damages and losses as the Landlord may incur by reason of the Tenant's breach hereof.

If there is a fire or other casualty, the Tenant will give immediate notice to the Landlord. If the Premises are partially damaged by fire, the elements or other casualty, the Landlord will repair the same as speedily as practicable, but the Tenant's obligation to pay the Basic Rent or Additional Rent hereunder will not cease. If, in the opinion of the Landlord, the Premises are so substantially damaged as to render them untenantable, then the Basic Rent and Additional Rent will cease until such time as the Premises are made tenantable by the Landlord. If, however, in the opinion of the Landlord, the Premises are so substantially damaged that the Landlord decides not to rebuild, then the Rent and Additional Rent will be paid up to the time of such destruction and this Lease will terminate as of the date of such destruction. The Rent and Additional Rent will be apportioned as of the termination date, and any Basic Rent paid for any period beyond that date will be repaid to the Tenant. However, the preceding provisions of this Paragraph will not become effective or be applicable if the fire or other casualty and damage are the result of the carelessness, negligence or improper conduct of the Tenant or the Tenant's agents, employees, guests, licensees, invitees, subtenants, assignees or successors. In such case, the Tenant's liability for the payment of the Basic Rent and the performance of all the covenants, conditions and terms hereof on the Tenant's part to be performed will continue and the Tenant will be liable to the Landlord for the damage and loss suffered by the Landlord. If the Tenant is insured against any of the risks herein covered, then the proceeds of such insurance will be paid over to the Landlord to the extent of the Landlord's costs and expenses to make the repairs hereunder, and such insurance carriers will have no recourse against the Landlord for reimbursement.

37. **CHOICE OF LAW.** This Lease, and the rights and obligations of the parties hereto, shall be interpreted and construed in accordance with the laws of the jurisdiction in which the Premises are located.

38. **ENVIRONMENTAL MATTERS.**

9

(A)     Definitions. The following definitions apply in this Lease:

(i)     "Hazardous Materials" means petroleum or petroleum products; asbestos or materials containing asbestos; tetrachloroethylene; polychlorinated benzyls; polychlorinated biphenyls ("PCBs") or materials containing PCBs; urea formaldehyde foam; nuclear waste; medical or "red bag" waste; and any hazardous substance, pollutant, contaminant or toxic substance, material or waste which is now or hereafter regulated by any federal, state, local or other laws, codes, ordinances or regulations pertaining to materials deemed to be hazardous or harmful to human health or the environment.

(ii)    "Environmental Laws" means all laws, codes, ordinances, rules, regulations and orders, and requirements of common law, relating to Hazardous Materials.

(B)     Tenant's Obligations.

(i)     Except for those Hazardous Materials customarily used in ordinary quantities in the operation of an oral surgery and implants practice (the "Permitted Materials"), Tenant shall not use, sell, store, treat, generate, dispose of, discharge, release, emit, or otherwise handle Hazardous Materials on or in any manner affecting the Premises. Tenant shall use, store, dispense and dispose of all Permitted Materials in compliance with all Environmental Laws and other legal requirements. Tenant represents and warrants that, throughout the Term, all of its activities at the Premises shall comply with Environmental Laws.

(ii)    Tenant shall be solely responsible for, and shall indemnify, defend and hold harmless Landlord from and against, all claims, demands, causes of action, judgments, liabilities, costs, expenses, penalties and fines (including reasonable attorneys, consultant and expert fees) asserted against, incurred by or imposed on Landlord in connection with any Tenant Environmental Activity. The term "Tenant Environmental Activity" means: (i) the presence of Hazardous Materials (including without limitation Permitted Materials) in, on, at or under the Premises as a result of the actions or omissions of Tenant or its agents, servants, employees, contractors, licensees, or invitees, and (ii) any breach of any provision of this Lease by Tenant or its agents, servants, employees, contractors, licenses or invitees.

(iii)   Tenant shall, at its sole cost and expense, take all action necessary to remediate any contamination, release, discharge or emission of Hazardous Materials in, on, at or under the Premises which results from Tenant Environmental Activity. All such remediation shall be performed pursuant to a remediation plan and to remediation standards that have been approved in advance in writing by Landlord. Tenant shall not propose, conduct, engage in or seek approval of any remediation activities or standards that would result in the imposition of or create any deed restriction on the Premises or which would impair Landlord's ability to re-lease, to sell or to finance the Premises.

(iv)    Within three (3) days after written request, Tenant shall provide Landlord with such information and documents as Landlord may reasonably request in connection with any Tenant Environmental Activity or to demonstrate Tenant's compliance with this Section.

(C)     Access By Landlord. Landlord shall have reasonable access to the Premises at reasonable times and upon reasonable prior notice for the purpose of determining whether Tenant is in compliance with this Section, including without limitation the right to take such samples and engage in such testing as Landlord may determine is necessary or appropriate. If any such sampling or testing is necessary or appropriate in connection with any Tenant Environmental Activity, such sampling and testing shall be conducted at the expense of Tenant.

10

(D)   <u>Landlord's Obligations</u>.  Landlord shall be responsible for all Hazardous Materials at the Premises prior to the Possession Date and shall indemnify, defend and hold harmless Tenant from all claims, demands, loss, costs and expenses in connection therewith.

(E)   <u>Survival</u>.  The provisions of this Section survive the expiration or earlier termination of this Lease.

39.   **FORCE MAJEURE.**  All performances, undertakings, or obligations of Landlord or Tenant hereunder shall be subject to force majeure in the event of an Act of God, epidemic, pandemic, government closures or furloughs, catastrophe, accident, weather, storms, acts of war and insurrection, unavailability of materials, strikes, embargoes, moratoriums or other conditions beyond Landlord's or Tenant's control. During such force majeure events, the delay with respect to such performances, undertakings or obligations shall be excused, but, in no event, shall Tenant be excused for the non-payment of Rent or any delay in doing so.

40.   **COUNTERPARTS/SIGNATURES.**  This Lease may be executed in counterparts. The parties agree to accept facsimile, electronic and scanned signatures as originals; a party supplying a facsimile, electronic or scanned signature shall supply the original signature upon request.

*[Signature Page Follows]*

11

IN WITNESS WHEREOF, Landlord and Tenant have executed and delivered this Lease as of the day of the year first above written.

**LANDLORD:**
MAGID ENTERPRISES, LLC

By: *Mitchell Magid*
　　　C741466A34FB48B...
Name: Dr. Mitchell Magid
Title: Manager

**TENANT:**
GENERALHEALTH GROUP INC.

By: *RUTH BERENSTEIN*
　　　BB9EE191224C430...
Name: Ruth Berenstein
Title: Managing Director

## Exhibit A
## Personal Guaranty

FOR VALUE RECEIVED and in consideration of, and as an inducement of Landlord's making the foregoing Lease dated as set forth in this Lease, between the Landlord and Tenant, the undersigned jointly and severally (if more than one party is executing this Guaranty) guarantee to Landlord, its heirs, successors and assigns, the prompt and full performance and observance of all of the obligations, covenants, conditions and agreements therein provided to be performed and observed by Tenant, without requiring any notice of default of nonpayment, nonperformance or nonobservance, or proof, or notice, or demand in order to charge the undersigned therefor, all of which the undersigned hereby expressly waive, and the undersigned, jointly and severally (if more than one party is executing this Guaranty), hereby expressly agree that the validity of this Guaranty and the obligations of the undersigned hereunder shall not be terminated, affected or impaired by reason of the assertion, or by reason of the non-assertion, by Landlord against Tenant, of any of the rights or remedies reserved to Landlord pursuant to the provisions of this Lease. The undersigned, jointly and severally (if more than one party is executing this Guaranty), further covenant and agree that this Guaranty shall remain and continue in full force and effect as to any renewal, modification, or extension of this Lease. The undersigned, jointly and severally (if more than one party is executing this Guaranty), further covenant and agree that Landlord may deal with Tenant in whatever manner Landlord may elect without diminishing or discharging the liabilities and responsibility of the undersigned under this Guaranty. The undersigned, jointly and severally (if more than one party is executing this Guaranty), further consent to any assignment or subletting, in whole or in part, of this Lease or the Premises by Landlord or by Tenant, their successors and assigns; and the undersigned, jointly and severally (if more than one party is executing this Guaranty), further covenant and agree that this Guaranty shall inure to the benefit of the successors and assigns of Landlord, and shall continue in the event of a permitted assignment and/or subletting of this Lease. The undersigned hereby consents to the jurisdiction of any court in the State in which the Premises are located.

IN WITNESS WHEREOF, each of the undersigned has signed, sealed, executed and delivered this Guaranty on the date set forth beside his name.

Date: June 30, 2023

DocuSigned by:
*RUTH BERENSTEIN*
BB9EE191224C430...
Ruth Berenstein; Guarantor

Address: 244 5th ave, unit L270
New York, NY 10001

13

4884-9235-9513, v. 4